UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CALEB OLUWAKOREDE OLUWASEUN MUSA,

                                        Plaintiff,

v.                                                              1:25-cv-0971
                                                                (AJB/TWD)


ALBANY MILITARY ENTRANCE PROCESSING STATION, et al.,

                                        Defendants.
_____

APPEARANCES:

CALEB OLUWAKOREDE OLUWASEUN MUSA
*Plaintiff, pro se*
5229 Blanche Moore Drive
Corpus Christi, TX 78411

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**REPORT-RECOMMENDATION AND ORDER**</u>

## I.    INTRODUCTION

The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff

Caleb Oluwakorede Oluwaseun Musa ("Plaintiff").  Dkt. No. 1.  Plaintiff has not paid the filing

fee for this action and seeks leave to proceed *in forma pauperis* ("IFP").  Dkt. No. 2.

## II.    IFP APPLICATION

When a civil action is commenced in a federal district court, the statutory filing fee,

currently set at $405.00, must ordinarily be paid.  *See* Fed. R. Civ. P. 3.  In order to proceed IFP

in federal court, the court must be satisfied by the plaintiff's affidavit that he is unable to pay the

cost of these proceedings.  *See* 28 U.S.C. § 1915.  "The purpose of 28 U.S.C. 1915 is to ensure

that litigants will not be deprived of access to the judicial system because of their financial circumstances." *Mulqueen v. Herkimer Cnty.*, No. 6:22-CV-1301 (TJM/ATB), 2023 WL 184514, at *1 (N.D.N.Y. Jan. 13, 2023) (citing *Deep v. Boies*, No. 1:09-MC-0073 (DNH/DEP), 2010 WL 11526763, at *1 (N.D.N.Y. Mar. 19, 2010)) (internal quotations and additional citations omitted). "Whether to grant an application to proceed IFP rests within the sound discretion of the court." *Id*. (citation omitted).

Section 1915(a)(1) does not set financial guideposts as standards for determining IFP eligibility. The statute provides that IFP status may be granted when the court is satisfied "that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). To make this threshold showing, a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Tucker v. United States*, 142 Fed. Cl. 697, 707 (2019) (citations omitted). "When considering a motion filed pursuant to § 1915(a), [t]he only determination to be made by the court . . . is whether the statements in the affidavit satisfy the requirement of poverty." *Mulqueen*, 2023 WL 184514, at *1 (internal quotations and citations omitted). "Such an affidavit will be held sufficient if it represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." *Id*. (internal quotations and citation omitted). As the Second Circuit has explained, "no party must be made to choose between abandoning a potentially meritorious claim or foregoing the necessities of life." *Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (citing *Adkins v. E.I. DuPont de Nemours & Co., Inc.*, 335 U.S. 331, 339 (1948)).

Here, Plaintiff states he is currently employed, and receives $40,000.00 in wages annually. *See* Dkt. No. 2 at 1. Plaintiff reported he has $4,000 in a checking or savings account.

*See id.* at 2.  Plaintiff indicated his regular monthly expenses including housing, a phone bill, transportation, and student loans; however, he did not identify an amount for each expense.  *See id*.  Plaintiff reported no dependents.  *See id*.

Based upon the information provided in Plaintiff's sworn IFP application, this Court is not convinced that Plaintiff is "unable to pay the costs of these proceedings" or that paying the filing fee would pose a "serious hardship" on Plaintiff.  "Federal courts often look to federal poverty guidelines to determine whether a plaintiff would be subject to serious hardship if compelled to pay a filing fee."  *Mulqueen*, 2023 WL 184514, at *2 (citations omitted).  The Annual Update of the Poverty Guidelines promulgated by the Department of Health and Human Services most recently set the poverty guidelines for a one person household in the 48 contiguous States at $15,650.[1]  Therefore, Plaintiff has not established on this record that paying the filing fee would present a choice "between abandoning a potential meritorious claim or foregoing the necessities of life."  *Potnick*, 701 F.2d at 244; *see also*, *e.g.*, *Fuller v. ProCare LTC*, No. 5:25-CV-0101 (DNH/TWD), 2025 WL 861829, at *2 (N.D.N.Y. Mar. 19, 2025), *report and recommendation adopted*, 2025 WL 1076883 (N.D.N.Y. Apr. 10, 2025).

Accordingly, the Court recommends that Plaintiff's motion to proceed IFP be denied,[2] and that Plaintiff be directed to pay the $405.00 filing fee if he wishes to proceed with this action.

---

[1] *See* https://www.federalregister.gov/documents/2025/01/17/2025-01377/annual-update-of-the-hhs-poverty-guidelines (last visited Oct. 9, 2025).

[2] "A decision to deny or revoke IFP status [ ] is generally regarded as dispositive and thus falls outside [a magistrate judge's] purview."  *Virola v. Gonyo*, No. 1:24-CV-1393 (LEK/DJS), 2024 WL 5361071, at *2 (N.D.N.Y. Dec. 2, 2024) (quoting *Abreu v. Lira*, No. 9:12-CV-1385 (NAM/DEP), 2014 WL 4966911, at *2 n.1 (N.D.N.Y. Sept. 30, 2014) (citing *Kiobel v. Millson*, 592 F.3d 78, 92 (2d Cir. 2010))), *report and recommendation adopted*, 2025 WL 317243 (N.D.N.Y. Jan. 28, 2025).

III.    **COMPLAINT**

Plaintiff asserts "[t]his action arises from the intentional and negligent acts of the Albany

Military Entrance Processing Station (MEPS) and Army National Guard Recruiter Adam Rivera,

which caused Plaintiff . . . significant physical, emotional, and financial harm." Dkt. No. 1 at 4.[3]

> Despite experiencing a serious car accident shortly before shipping
> to Basic Training, the Plaintiff was suffering from documented
> anxiety and mental distress, was coerced into lying by the recruiter
> under threat of a dishonorable discharged if he revealed the truth to
> MEPS.  The MEPS medical staff knew the anxiety plaintiff was
> experiencing, but willfully neglected it in favor of the recruiters
> coercion to ship the Plaintiff.

*Id*.  Plaintiff contends "[a]s a direct result of these fraudulent, negligent, and reckless acts," he:

(1) "Declared medically unfit under the army for his journey to Basic Training, making his

mental health worse;" (2) "Had his driver's license suspended, because of the accident with its

medical ramifications, and MEPS and his chain of command took no action to remedy;" (3)

"Suffered extended emotional distress which included severe anxiety related to military service;

and" (4) "Did not receive proper medical discharge or VA disability despite clear service

aggravation." *Id*.

The complaint lists four defendants in the caption, (1) "ALBANY MEPS (Military

Entrance Processing Station);" (2) "ADAM RIVERA (U.S. Army Recruiter);" (3) "U.S.

DEPARTMENT OF DEFENSE;" and (4) "NEW YORK ARMY NATIONAL GUARD." *Id*. at

1.  Plaintiff further states Defendant Albany Military Entrance Processing Station "improperly

cleared Plaintiff for service despite documented medical contraindications" and "Defendant

---

[3] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the
Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are
reproduced exactly as they appear in the original and errors in spelling, punctuation, and
grammar have not been corrected.

Adam Rivera is a U.S. Army recruiter operating in New York who coerced Plaintiff into concealing his medical condition through threats of dishonorable discharge if he failed to ship to basic training." *Id*. at 5.

The portion of the complaint captioned "FACTS" reads, in full,

> Plaintiff's medical condition and fitness for service were formally documented by civilian physicians (Exhibit A) and disclosed to MEPS staff during processing, yet the Army National Guard proceeded with his enlistment after improper medical clearance (Exhibits B-F).  Defendants' actions violate:
> - AR 40-501: Medical fitness standards for military service
> - AR 635-200: Procedures for separation of unfit personnel
> - Due Process (5th Amendment): Coerced enlistment under threat of punishment
> - Negligence per se: Failure to follow mandatory medical protocols

*Id*. at 5-6.  Plaintiff identified three claims for relief: (1) "NEGLIGENCE (NY CPLR § 214); (2) "FRAUDULENT INDUCMENT (NY Gen Oblig Law § 5-701);" and (3) INTENTIONAL INFLICTION OF EMPOTIONAL DISTRESS."  *Id*. at 6.  Plaintiff requests the following relief: (1) "Declaratory Judgment: Finding enlistment contract void due to fraud/duress with no wrongdoing on my part;" (2) "Injunctive Relief: Correction of military records to reflect medical separation and service connected disability (UPDATE TO DD214);" (3) "Punitive Damages: For Defendants' willful disregard of medical protocols;" (4) "Waiver of Court Fees and costs under the Equal Access to Justice Act;" and (5) "Consideration at the termination of contract for VA disability."  *Id*.

## IV.    STANDARD OF REVIEW

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2);

*Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  The Court must also

dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction.  *See*

Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter

jurisdiction, the court must dismiss the action.").

     While the law mandates dismissal on any of these grounds, the Court is obliged to

construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest arguments that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*,

470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in

original).  A claim is frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke*

*v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2007); *see also Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when

either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an

indisputably meritless legal theory.").

     Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil

Procedure.  *See, e.g.*, *Cole v. Smrtic*, No. 1:24-CV-00847 (MAD/CFH), 2024 WL 4870495, at *2

(N.D.N.Y. Nov. 21, 2024) (explaining, "special solicitude for *pro se* pleadings has its limits,

because *pro se* pleadings still must comply with . . . the Federal Rules of Civil Procedure . . . .")

(internal quotations and citation omitted), *report and recommendation adopted*, 2025 WL

247901 (N.D.N.Y. Jan. 21, 2025).  To survive dismissal for failure to state a claim, a complaint

must contain a short and plain statement of the claim showing that the pleader is entitled to relief.

Fed. R. Civ. P. 8(a)(2).  This short and plain statement of the claim must be "plausible on its

face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.    ANALYSIS

Upon review, the complaint fails to comply with the pleading requirements set forth in the Federal Rules of Civil Procedure and, even afforded a liberal construction, fails to state a claim. Therefore, the undersigned recommends dismissal of the complaint in its entirety.

First, Rule 8 of the Federal Rules of Civil Procedure requires a pleading contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "The purpose of [Rule 8] is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate

defense and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotations and citations omitted).  Further, "[a]lthough 'no technical form is required,' the Federal Rules make clear that each allegation contained in the pleading 'must be simple, concise, and direct.'" *Cole*, 2024 WL 4870495, at *2 (quoting Fed. R. Civ. P. 8(d)).  Therefore, allegations "so vague as to fail to give the defendants adequate notice of the claims against them . . . ." are subject to dismissal.  *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Next, as relevant here, Rule 10 of the Federal Rules of Civil Procedure provides "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances . . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense."  Fed. R. Civ. P. 10.  Rule 10 serves "to provide an easy mode of identification for referring to a particular paragraph in a prior pleading . . . ."  *Flores*, 189 F.R.D. at 55 (internal quotations and citation omitted).  A complaint that fails to comply with these pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims," and may properly be dismissed by the Court.  *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996); *see also*, *e.g.*, *Gosier v. Collins*, No. 6:23-CV-1485 (DNH/TWD), 2024 WL 1016392, at *2 (N.D.N.Y. Mar. 8, 2024), *report and recommendation adopted*, 2024 WL 1307035 (N.D.N.Y. Mar. 27, 2024).

Here, the complaint lacks a short and plain statement showing Plaintiff is entitled to relief as well as numbered paragraphs, limited as far as practicable to a single set of circumstances. Further, the pleading consists largely of legal conclusions, rather than well-pleaded factual

allegations.  From what the Court can glean, Plaintiff's claims relate to his military service; however, the complaint is entirely devoid of any indication as to *when* the alleged wrongdoing occurred.  Additionally, Plaintiff has not signed the complaint.  *See generally*, Dkt. No. 1.  As such, the pleading violates Federal Rule of Civil Procedure 11(a) and Northern District of New York Local Rule 10.1(c)(2).  *See*, *e.g.*, *Shibley v. Bixlerond*, No. 6:24-CV-0722 (BKS/TWD), 2024 WL 3460788, at *7 (N.D.N.Y. July 16, 2024), *report and recommendation adopted*, 2024 WL 4203975 (N.D.N.Y. Sept. 16, 2024).  Therefore, dismissal is warranted.

## VI.    CONCLUSION

ACCORDINGLY, it is hereby

RECOMMENDED that Plaintiff's motion to proceed IFP (Dkt. No. 2) be **DENIED**; and it is further

RECOMMENDED that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE**; and it is further

ORDERED that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS**

---

[4] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

**WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: October 10, 2025
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

🚩 KeyCite Yellow Flag
Remanded by   Mulqueen v. Herkimer County,   N.D.N.Y.,   June 13, 2023

2023 WL 184514
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Wendy S. MULQUEEN and Brian G. Mulqueen, Plaintiffs,

v.

HERKIMER COUNTY, et al., Defendants.

6:22-CV-1301 (TJM/ATB)
|
Signed January 13, 2023

**Attorneys and Law Firms**

WENDY S. MULQUEEN, Plaintiff, pro se.

BRIAN G. MULQUEEN, Plaintiff, pro se.

### ORDER and REPORT-RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge

 **\*1**  The Clerk has sent to the court for review a complaint brought pursuant to 42 U.S.C. § 1983, filed by husband-and-wife plaintiffs Brian and Wendy Mulqueen. (Dkt. No. 1) ("Compl."). Plaintiffs have also moved to proceed in forma pauperis ("IFP") (Dkt. Nos. 2, 3), and for appointment of counsel. (Dkt. Nos. 4, 5).

### I. In Forma Pauperis ("IFP") Applications

#### A. Legal Standards
In order to proceed IFP in federal court, the court must be satisfied by plaintiffs' affidavits that they are unable to pay the "cost of these proceedings." (Dkt. Nos. 2 at 1; 3 at 1); 28 U.S.C. § 1915. " 'The purpose of 28 U.S.C. 1915 is to ensure that litigants will not be deprived of access to the judicial system because of their financial circumstances.' " *Deep v. Boies*, No. 1:09-MC-73, 2010 WL 11526763, at \*1 (N.D.N.Y. Mar. 19, 2010) (quoting *Monti v. McKeon*, 600 F. Supp. 112, 114 (D. Conn. 1984)) (citing *Harlem River Consumers Co-op, Inc. v. Associated Grocers of Harlem, Inc.*, 71 F.R.D. 93, 96 (S.D.N.Y. 1976)). Whether to grant an application to proceed IFP rests within the sound discretion of the court. *Id.* (citing *Monti*, 600 F. Supp. at 113). " 'There is surprisingly sparse number of cases which apply the general indigency standards to particular fact situations.' " *Id.* (quoting *In re Koren*, 176 B.R. 740, 744 (E. D. Pa. 1995)).

Section 1915(a)(1) does not set financial guideposts as standards for determining IFP eligibility. The statute provides that IFP status may be granted when the court is satisfied "that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). To make this threshold showing, a plaintiff must demonstrate " 'that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute.' " *Tucker v. United States*, 142 Fed. Cl. 697, 707 (2019) (quoting *Fiebelkorn*, 77 Fed. Cl. 59, 62 (2007)); *Deep*, 2010 WL 11526763, at \*1 (quoting *Fiebelkorn*, 77 Fed. Cl. at 62) (citing *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)). When considering a motion filed pursuant to § 1915(a), " '[t]he only determination to be made by the court ... is whether the statements in the affidavit

Mulqueen v. Herkimer County, Not Reported in Fed. Supp. (2023)

2023 WL 184514

satisfy the requirement of poverty.' " *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004) (quoting *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976)) (alteration in original). "Such an affidavit will be held sufficient if it represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." *Id.* As the Second Circuit has noted, "[n]o party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick v. Eastern State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983)(citing *Adkins,* 335 U.S. at 339).

**B. Application**

In this case, plaintiff Brian Mulqueen states in his application that he is currently employed, that his yearly gross pay is approximately $74,000, and that he receives $878.42 in net pay weekly. (Dkt. No. 3 at 1). Mr. Mulqueen's wife, Wendy Mulqueen, indicates that she is not employed, but appears to receive $650.00 a month in "rent payments, interest, or dividends." (Dkt. No. 2 at 1). The plaintiffs have not identified any debts or financial obligations, and state that they make monthly payments toward their mortgage, car, utilities and food. (Dkt. Nos. 2 at 2; 3 at 2). They further represent that they contribute "full support" to their six children [1] and a 45 year-old "sister." (*Id.*). The plaintiffs state that they have "$0" in cash or in a checking or savings account. (*Id.*).

[1]    The children's ages are as follows: 4, 7, 11, 13, 18, and 23. (Dkt. Nos. 2 at 2; 3 at 2).

**\*2**   Based upon the information provided in the plaintiffs' motions, this court is not convinced that plaintiffs are "unable" to pay the filing fee, or that paying a filing fee would pose a "serious hardship" on the plaintiffs. Federal courts often look to federal poverty guidelines to determine whether a plaintiff would be subject to serious hardship if compelled to pay a filing fee. *See, e.g., Andrews v. U.S. Bank Nat'l Ass'n,* No. 3:22-CV-00456, 2022 WL 2287689, at *1 (D. Conn. Apr. 8, 2022) (looking to federal poverty guidelines to determine IFP status); *Fuentes v. United States*, 100 Fed. Cl. 85, 92 (2011) (same). Here, Mr. Mulqueen's gross income of over $70,000 alone places the plaintiffs above the federal poverty guidelines for even their purported nine person household. [2]   The Annual Update of the Poverty Guidelines promulgated by the Department of Health and Human Services most recently set the poverty guidelines for a family of nine in the 48 contiguous States at $51,350. [3]   Accordingly, the plaintiffs have not established on this record that paying the filing fee would present them with a choice "between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick*, 701 F.2d at 244. The court thus recommends that the district court dismiss plaintiffs' complaint without prejudice if they do not submit the filing fee within thirty (30) days of the filing date of this Report-Recommendation and Order. [4]

[2]    "In assessing an application to proceed in forma pauperis, a court may consider the resources that the applicant has or 'can get' from those who ordinarily provide the applicant with the 'necessities of life,' such as 'from a spouse.' " *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 537 (S.D.N.Y. 2002) (quoting *Williams v. Spencer*, 455 F. Supp. 205, 208-09 (D. Md. 1978)).

[3]    *See* https://www.federalregister.gov/documents/2022/01/21/2022-01166/annual-update-of-the-hhs-poverty-guidelines.

[4]    A decision to deny IFP status is typically regarded as dispositive. *Abreu v. Lira*, No. 9:12-CV-1385(NAM/DEP), 2014 WL 4966911, at *2 n.1 (N.D.N.Y. Sept. 30, 2014) (citing *Kiobel v. Millson*, 592 F.3d 78, 92 (2d Cir. 2010)). Accordingly, the court has recommended to the District Court denial of plaintiff's application for IFC status.

**II. Appointment of Counsel**

**A. Legal Standards**

There is no right to appointment of counsel in civil matters. *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). Title 28 of United States Code Section 1915 specifically provides that a court may request an attorney to represent any person "unable to afford

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

counsel." 28 U.S.C. § 1915(e)(1). Appointment of counsel must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. *Cooper v. A. Sargenti, Inc.*, 877 F.2d at 172-73.

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the Court in ruling upon such a motion. As a threshold matter, the Court should ascertain whether the indigent's claims seem likely to be of substance. If so, the Court should then consider:

> The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge*, 802 F.2d at 61).

### B. Analysis

As previously set forth, plaintiffs have not established that they qualify for IFP status based on the record presently before this court. For those same reasons, the court is not convinced that plaintiffs have established entitlement to the appointment of counsel on the basis of indigency, pursuant to 28 U.S.C. § 1915(e)(1).

 **\*3** Moreover, this action was only recently commenced, and the only facts upon which this court may base its decision as to whether this lawsuit is of substance are the facts stated in plaintiffs' complaint. Even if the court had granted plaintiffs' IFP status and allowed this case to go forward, where there are merely unsupported allegations, the moving party does not meet the first requirement imposed by the Second Circuit for appointment of pro bono counsel. *See Harmon v. Runyon*, No. 96 Civ. 6080, 1997 WL 118379 (S.D.N.Y. Mar. 17, 1997); *see also Creach v. Doe*, No. 1:20-CV-199 (DNH/CFH), 2020 WL 4721434, at \*8 (N.D.N.Y. June 16, 2020), *report and recommendation adopted*, 2020 WL 4698507 (N.D.N.Y. Aug. 12, 2020) ("Where a plaintiff does not provide a Court with evidence, as opposed to mere allegations, relating to his claims against the defendants, he does not meet the first requirement imposed by the Second Circuit relative to application seeking appointment of counsel."). Thus, the court will deny appointment of counsel at this time, without prejudice.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiffs' motions to proceed IFP (Dkt. Nos. 2, 3) be **DENIED,** and that the district court dismiss the plaintiffs' complaint without prejudice if they do not submit the filing fee within thirty (30) days of this Report-Recommendation and Order, and it is

**ORDERED**, that plaintiffs' motions for appointment of counsel (Dkt. Nos. 4, 5) are **DENIED WITHOUT PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Case 1:25-cv-00971-AJB-TWD    Document 3    Filed 10/10/25    Page 14 of 74

Mulqueen v. Herkimer County, Not Reported in Fed. Supp. (2023)
2023 WL 184514

**All Citations**

Not Reported in Fed. Supp., 2023 WL 184514

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Deep v. Boies, Not Reported in Fed. Supp. (2010)

2010 WL 11526763

Case 1:25-cv-00971-AJB-TWD    Document 3    Filed 10/10/25    Page 15 of 74

2010 WL 11526763
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

John A. DEEP, Plaintiff,

v.

David BOIES, et al., Defendants.

Civ. Action No. 1:09–MC–73 (DNH/DEP)
|
Signed 03/19/2010

**Attorneys and Law Firms**

John A. Deep, Cohoes, NY, pro se.

Adam R. Shaw, George F. Carpinello, Boies, Schiller & Flexner LLP, Mark T. Walsh, Gleason Dunn Walsh & O'Shea, Albany, NY, for Defendants.

DECISION AND ORDER

David E. Peebles, U.S. Magistrate Judge

*1 By order issued on January 8, 2010 by District Judge David N. Hurd, plaintiff's motions to vacate the registration in this district of a judgment from the District of Maine and to quash subpoenas issued in aid of enforcement of the judgment registered in this district were denied, and judgment was accordingly entered. *See* Dkt. Nos. 13 and 14. Plaintiff has appealed the court's order and resulting judgment to the Second Circuit Court of Appeals. *See* Dkt. No. 18. Presently before the court is plaintiff's application to proceed *in forma pauperis* in connection with his appeal of this matter, which defendants have opposed. *See* Dkt. Nos. 21 and 23.

Where a plaintiff seeks leave to proceed *in forma pauperis,* the court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying, in full, the $450.00 fee for filing an appeal.

28 U.S.C. § 1915(a)(1) authorizes a court to permit a litigant to proceed IFP, if it is determined that he or she is unable to pay the required filing fee.[1] "The purpose of 28 U.S.C. 1915 is to ensure that litigants will not be deprived of access to the judicial system because of their financial circumstances." *Monti v. McKeon,* 600 F. Supp. 112, 114 (D. Conn. 1984) (citing *Harlem River Consumers Co-op, Inc. v. Associated Grocers of Harlem, Inc.,* 71 F.R.D. 93, 96 (S.D.N.Y. 1976)). The decision of whether to grant an application to proceed IFP rests within the sound discretion of the court. *Id.,* 600 F. Supp. at 113. "There is surprisingly sparse number of cases which apply the general indigency standards to particular fact situations." *In re Koren,* 176 B.R. 740, 744 (E. D. Pa. 1995).

1    The language of that section, which is admittedly ambiguous, suggests an intent to limit availability of IFP status under that provision to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing pursuit of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets _such prisoner_ possesses ...") (emphasis added). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Fiebelkorn v. U.S.,* 77 Fed. Cl. 59, 60 n. 1 (Fed. Ct. Cl. 2007)(citing *Hayes v. U. S.,* 71 Fed. Cl. 366, 367 (Fed. Cl. 2006)).

Case 1:25-cv-00971-AJB-TWD   Document 3   Filed 10/10/25   Page 16 of 74
Deep v. Boies, Not Reported in Fed. Supp. (2010)
2010 WL 11526763

As a standard for determining eligibility for IFP status, section 1915(a)(1) does not set financial guideposts; instead, the statute merely provides that IFP status may be granted when the court is satisfied "that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). To make this threshold showing a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Fiebelkorn v. U. S.,* 77 Fed. Cl. at 62 (citing *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 339, 69 S. Ct. 85 (1948)). Put another way, section 1915(a)(1) does not require a showing of absolute destitution to qualify for IFP status. *Lee v. McDonald's Corp.,* 231 F.3d 456, 458 (8th Cir. 2000). As the Second Circuit has noted, "[n]o party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick v. Eastern State Hosp.,* 701 F.2d 243, 244 (2d Cir. 1983)(citing *Adkins*, 335 U.S. at 339, 69 S. Ct. at 89).

**\*2** Having carefully reviewed plaintiff's IFP application, I find that plaintiff's application fails to contain sufficient information for the court to make the determination whether payment for the required fee would impose a serious hardship on him. In his IFP application, Deep simply states in wholly conclusory fashion that "... unless the allegedly registered judgment is limited or modified to permit [him] to pay the docket fees, [he] cannot prepay the docket fees for [his] appeal or post a bond for them." *See* Dkt. No. 21, p. 2 at ¶ 3. It should be noted that when this action was commenced in this district the plaintiff paid the requisite $39.00 fee for filing a miscellaneous case in this district. It may be that plaintiff is lacking in assets not reflected in his application and has undisputed debts or other encumbrances which would inform the IFP analysis and alter the result. At this juncture, however, the court is unable to conclude that plaintiff is indigent and thus entitled to IFP status.[2] Accordingly, the court will deny plaintiff's application for IFP status without prejudice. Plaintiff, however, may file a renewed application which sets forth additional information regarding his financial condition, or he must pay the $450.00 filing fee for the appeal of this matter in full.

[2]   Factors potentially relevant to IFP status include marital status and number of dependents, place of residence, nature of employment, earning potential, unencumbered assets, possible aid from friends and relatives and/or charities, the particular cost relative to the applicant's financial means. *In re Koren,* 176 B.R. at 744.

WHEREFORE, it is hereby

ORDERED, that plaintiff's application to proceed with the appeal of this matter *in forma pauperis* (Dkt. No. 21) is DENIED, without prejudice; and it is further

ORDERED, that the Clerk serve a copy of this order on the plaintiff by regular mail and upon defendants' counsel by electronic means.

**All Citations**

Not Reported in Fed. Supp., 2010 WL 11526763

---

**End of Document**                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 861829
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alesha T. FULLER, Plaintiff,

v.

PROCARE LTC, et al., Defendant.

5:25-cv-0101 (DNH/TWD)
|
Signed March 19, 2025

**Attorneys and Law Firms**

ALESHA T. FULLER, Plaintiff, pro se, 617 Hickory Street #B, Syracuse, NY 13203.

<u>**REPORT-RECOMMENDATION AND ORDER**</u>

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1** The Clerk has sent to the Court for review a complaint filed by *pro se* plaintiff Alesha T. Fuller ("Plaintiff"). Dkt. No. 1. Plaintiff has not paid the statutory filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). Dkt. No. 2. She also requests permission to file documents electronically in ECF. Dkt. No. 4.

**I. PLAINTIFF'S IFP APPLICATION**

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405.00, must ordinarily be paid. *See* Fed. R. Civ. P. 3. In order to proceed IFP in federal court, the court must be satisfied by the plaintiff's affidavit that she is unable to pay the "cost of these proceedings." Dkt. No. 2 at 1; 28 U.S.C. § 1915. " 'The purpose of 28 U.S.C. 1915 is to ensure that litigants will not be deprived of access to the judicial system because of their financial circumstances.' " *Mulqueen v. Herkimer Cnty.*, No. 6:22-CV-1301 (TJM/ATB), 2023 WL 184514, at \*1 (N.D.N.Y. Jan. 13, 2023) (quoting *Deep v. Boies*, No. 1:09-MC-73, 2010 WL 11526763, at \*1 (N.D.N.Y. Mar. 19, 2010)) (other citation omitted). "Whether to grant an application to proceed IFP rests within the sound discretion of the court." *Id.* (citations omitted).

Section 1915(a)(1) does not set financial guideposts as standards for determining IFP eligibility. The statute provides that IFP status may be granted when the court is satisfied "that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). To make this threshold showing, a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Tucker v. United States*, 142 Fed. Cl. 697, 707 (2019) (citation omitted). "When considering a motion filed pursuant to § 1915(a), '[t]he only determination to be made by the court ... is whether the statements in the affidavit satisfy the requirement of poverty.' " *Mulqueen*, 2023 WL 184514, at \*1 (alteration in original) (citations omitted). "Such an affidavit will be held sufficient if it represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." *Id.* As the Second Circuit has noted, "[n]o party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick v. Eastern State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (citations omitted).

In this case, Plaintiff states in her application that she is currently employed, and reports receiving $1,223.10 in gross pay weekly and $872.20 in net pay weekly. Dkt. No. 2 at 1. She also states, however, that it "Depends on construction hours. hours vary. Some weeks 20 hours others 36 hours, layoff every few day due to weather issues. I worked <u>zero</u> hours this week due

to weather." *Id.* (emphasis in original). She reports no other sources of income. *Id.* Plaintiff has "no bank account due to this case" and only "$1.24 in cash." *Id.* at 2. Her reported monthly expenses total more than $4,500.00. *See id.* She owns a 2016 Chevy Equinox and a 2005 Jaguar S-type. *See id.* Plaintiff lists her emotional support dog, Boo, as a dependent. *See id.* As for other debts and financial obligations, Plaintiff reports an "$8,500 remaining balance on 2016 Equinox," and approximately $3000.00 in "overdrawn" credit cards. *Id.*

 **\*2**  Based upon the information provided in Plaintiff's sworn IFP application, this Court is not convinced that Plaintiff is "unable to pay the costs of these proceedings" or that paying the filing fee would pose a "serious hardship" on Plaintiff. "Federal courts often look to federal poverty guidelines to determine whether a plaintiff would be subject to serious hardship if compelled to pay a filing fee." *Mulqueen*, 2023 WL 184514, at \*2 (citations omitted). The Annual Update of the Poverty Guidelines promulgated by the Department of Health and Human Services most recently set the poverty guidelines for a one person household in the 48 contiguous States at $15,650. [1] Accordingly, Plaintiff has not established on this record that paying the filing fee would present a choice "between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick*, 701 F.2d at 244.

[1]     *See*  https://www.federalregister.gov/documents/2025/01/17/2025-01377/annual-update-of-the-hhs-poverty-guidelines (last visited Mar. 17, 2025).

Therefore, the Court recommends that Plaintiff's motion to proceed IFP be denied, [2] and that Plaintiff be directed to pay the $405.00 filing fee if she wishes to proceed with this action.

[2]     "A decision to deny or revoke IFP status [ ] is generally regarded as dispositive and thus falls outside [a magistrate judge's] purview." *Virola v. Gonyo*, No. 1:24-CV-1393 (LEK/DJS), 2024 WL 5361071, at \*2 (N.D.N.Y. Dec. 2, 2024) (quoting *Abreu v. Lira*, No. 9:12-CV-1385 (NAM/DEP), 2014 WL 4966911, at \*2 n.1 (N.D.N.Y. Sept. 30, 2014) (citing *Kiobel v. Millson*, 592 F.3d 78, 92 (2d Cir. 2010))), *report and recommendation adopted*, 2025 WL 317243 (N.D.N.Y. Jan. 28, 2025).

## II. SUFFICIENCY OF PLAINTIFF'S COMPLAINT

### A. Background

Plaintiff commenced the instant action utilizing the Court's form complaint pursuant to 42 U.S.C. § 1983. Dkt. No. 1. The complaint identifies four defendants: (1) ProCare LTC/Clarest Health ("ProCare"); (2) Jayson Steere, Supervisor; (3) Bob Battaglia, Manager/Director of Operations; and (4) Kathy Battaglia. *See* Dkt. No. 1 at 1-3. Plaintiff alleges the following facts:

> During my 10 months employed with ProCare I was subjected to countess write-ups of false performance evaluations. I had my social media stalked by management, lost wages due to stress from management altering my work schedule numerous times. Defense claimed I failed to keep in contact with human resources during major internal investigations which are lies. Attached is proof of emails between myself, management, and human resources.

Dkt. No. 1 at 2. Plaintiff further claims:

Defense allowed rude acts of behavior(s) from Caucasian employees allowing behaviors of bulling, intimidation as well as abandon work for the day. I was subjected to do Caucasian employees workload as well as my own. Failure to do mine and their work resulted in a write-up which I asked to challenge. I was not allowed to.

Once defense were informed of their actions through human resources retaliation would immediately follow. All my infractions with management came hours to days after contacting human resources. Attached is text messages, emails from

management displaying their discrimination and retaliation. Coworkers were told to inform management of my whereabouts after my termination.

Despite ProCare's claims of poor attendance and work ethic, defense did not dispute my unemployment as well as my performance bonus after my discharge. ProCare failed to train me. I still became one of the top pharmacy techs getting 2 separate pay increases making my pay $19 AM $21 PM per hour. My pharmacy technician license was next to obtain before my termination.

*Id.* at 5.

As relief, Plaintiff seeks: "$6,000,000 in future/back pay, punitive damages, pain and suffering, compensatory damages, liquidated damages, declaratory relief, injunctive relief and attorney fee. Restraining Order on Jayson Steere for defamation and stalking my Facebook." *Id.* at 5. Plaintiff attaches numerous exhibits to her complaint, including her right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"). *See* Dkt. Nos. 1-1, 5; *see also* Dkt. No. 6.

### B. Standard of Review

**\*3** "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The court must also dismiss a complaint, or portion thereof, when the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Generally, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## C. Analysis

The Court liberally construes the complaint as asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). For reasons discussed below, Plaintiff fails to plausibly allege violations under either statute. Therefore, the undersigned recommends dismissal of the complaint in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.

### 1. Section 1983

**\*4** Plaintiff purportedly brings this action pursuant to 42 U.S.C. § 1983, which "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y.) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

A claim for relief under Section 1983 must allege facts showing that the defendant acted under color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties are not liable under § 1983 unless they act under color of state law. *See Hooda v. Brookhaven Nat. Lab.*, 659 F. Supp. 2d 382, 392 (E.D.N.Y. 2009); *see also Benjamin v. Brookhaven Sci. Assocs., LLC*, 387 F. Supp. 2d 146, 156 (E.D.N.Y. 2005) ("[T]he [plaintiff's] section 1983 action is not cognizable against the [d]efendant because there are no allegations that it is a state or municipal entity acting under color of state law as required by 42 U.S.C. § 1983."). A plaintiff "bears the burden of proof on the state action issue." *Hadges v. Yonkers Racing Corp.*, 918 F.2d 1079, 1083 n.3 (2d Cir. 1990).

Here, Plaintiff does not allege any of the named defendants were acting under color of state law. *See generally* Dkt. No. 1. Defendant ProCare appears to be a private business, [3] and the individual defendants are private parties. Private conduct is simply beyond the reach of Section 1983 "no matter how discriminatory or wrongful that conduct may be." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Rendell-Baker v. Kohn*, 457 U.S. 830, 838-42 (1982); *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013); *cf. Crawley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 111 (2d Cir. 2003) ("For the conduct of a private entity to be fairly attributable to the state, there must be such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.") (internal quotation marks and citation omitted).

[3]    The Court takes judicial notice that "PROCARE LTC OF SYRACUSE LLC" is a domestic limited liability company. *See* https://apps.dos.ny.gov/publicInquiry/EntityDisplay (last visited Mar. 18. 2025).

Accordingly, the Court recommends dismissal of Plaintiff's Section 1983 claims for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Out of an abundance of caution, the Court recommends the dismissal be without prejudice and with leave to amend.

### 2. Title VII

Title VII provides that "every person, whether a citizen or not, has a right to be free from discrimination in employment on the basis of race, color, gender, national origin, or religion." 42 U.S.C. § 2000e-3(a). Upon review, Plaintiff's complaint does not state a claim under Title VII for two reasons. First, Plaintiff has not alleged her employer mistreated her *because* of her race, color, religion, sex, or national origin. *See generally* Dkt. No. 1. Second, "individual defendants cannot be held personally liable under Title VII." *Milner-Koonce v. Albany City Sch. Dist.*, No. 1:21-CV-1271 (LEK/CFH), 2022 WL 7351196, at \*3 (N.D.N.Y. Oct. 13, 2022) (citing *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (affirming the district

court's dismissal of "Title VII claims against the individual defendants") (other citations omitted)); *Chisholm v. Stryker*, No. 22-CV-2705, 2022 WL 3647288, at *4 n.2 (E.D.N.Y. Aug. 24, 2022) ("[I]t is long established that individuals are not subject to liability under Title VII.").

 **\*5**  Accordingly, the Court recommends dismissal of Plaintiff's Title VII claims for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). It is not clear to the Court whether Plaintiff could state a cognizable claim under Title VII against Defendant ProCare. Therefore, the Court recommends the dismissal against Defendant ProCare be without prejudice and with leave to amend. However, the Court recommends that Plaintiff's Title VII claims asserted against Defendants Jayson Steere, Bob Battaglia, and Kathy Battaglia be dismissed without leave to amend because the problem is substantive such that a better pleading will not cure it. *See Wright v. Martin, Harding & Mazzotti, LLP*, No. 1:22-CV-0515 (MAD/ML), 2022 WL 19795849, at *8 (N.D.N.Y. July 19, 2022) (recommending the plaintiff's Title VII claim against individuals be dismissed without leave to amend), *report and recommendation adopted*, 2023 WL 2910511 (N.D.N.Y. Apr. 12, 2023).

### 3. State Law Claims

A federal court may, in its discretion, exercise supplemental jurisdiction over a state law claim, but only to the extent it is accompanied by a claim over which the court has original jurisdiction. *See* 28 U.S.C. § 1367 ("[E]xcept [in limited circumstances], in any civil action of which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that are so related[.]").

In light of the above recommendations, the Court also recommends declining to exercise supplemental jurisdiction over any purported state law claims. *See Kolari v. New York Presbyterian Hosp.*, 455 F.3d 118, 120 (2d Cir. 2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has jurisdiction have been dismissed).

### III. PLAINTIFF'S MOTION FOR PERMISSION TO FILE ELECTRONICALLY

Plaintiff has also submitted a motion for permission to file documents electronically in ECF. *See* Dkt. No. 4. Given the foregoing recommendations, Plaintiff's motion is denied without prejudice and with leave to renew at a later stage in these proceedings, if warranted.

### IV. CONCLUSION
**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's IFP application (Dkt. No. 2) be **DENIED**; and it is further

**RECOMMENDED** that Plaintiff be directed to pay the filing fee of $405.00 if she wishes to proceed with this action; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted; and it is further

**RECOMMENDED** that Plaintiff be granted an opportunity to file an amended complaint that cures the pleading defects identified in this Report-Recommendation;[4] and it is further

---

[4]    The amended complaint must comply with Rules 8 and 10 of the Federal Rules of Civil Procedures. Plaintiff must set forth all of the claims she intends to assert and must demonstrate that a case or controversy exists between the Plaintiff

and the Defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. She must clearly set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts. Any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)). Any exhibits that Plaintiff wishes the Court to consider going forward, including her right-to-sue letter, must be attached to the amended complaint. Piecemeal pleadings are not permitted. *See* Dkt. No. 6.

**\*6 ORDERED** that Plaintiff's motion for permission to file electronically in ECF (Dkt. No. 4) is D**ENIED WITHOUT PREJUDICE AND WITH LEAVE TO RENEW** at later stage in these proceedings, if warranted; and it is further

**ORDERED** that the Clerk mail a blank Title VII complaint to Plaintiff; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. [5] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

---

[5]  If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 861829

---

**End of Document**                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1076883
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alesha T. FULLER, Plaintiff,

v.

PROCARE LTC, et al., Defendants.

5:25-CV-101

|

Signed April 10, 2025

**Attorneys and Law Firms**

ALESHA T. FULLER, Plaintiff, pro se, 617 Hickory Street #B, Syracuse, NY 13203.

## <u>ORDER ON REPORT & RECOMMENDATION</u>

DAVID N. HURD, United States District Judge

**\*1**  On January 22, 2025, plaintiff Alesha T. Fuller ("plaintiff"), acting *pro se*, commenced an action against defendants ProCare LTC/Clarest Health ("ProCare"), Jayson Steere, Bob Battaglia, and Kathy Battaglia (collectively, "defendants") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1983.[1] Dkt. No. 1. That same day, plaintiff also filed an application to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2. Thereafter, plaintiff filed a motion seeking permission to file documents electronically via ECF. Dkt. No. 4.

---

[1]    As discussed *infra*, even when construing plaintiff's complaint liberally, it is unclear specifically what causes of actions are being alleged.

On March 19, 2025, U.S. Magistrate Judge Thérèse Wiley Dancks conducted an initial review of plaintiff's complaint and IFP Application pursuant to 28 U.S.C. § 1915. Dkt. No. 7. Judge Dancks first advised by Report & Recommendation ("R&R") that plaintiff's IFP Application be denied.[2] *Id.* Judge Dancks further recommended that plaintiff's complaint should be dismissed in its entirety with leave to amend for failure to state a claim on which relief may be granted pursuant to 28 U.S.C. 1915(e)(2)(B)(ii). *Id.* Specifically, Judge Dancks advised that, insofar as plaintiff intended to bring a claim under § 1983, there were no allegations contained in the complaint that any named defendants were acting under color of state law.[3] *Id.* at 8. Next, with respect to plaintiff's Title VII claims, Judge Dancks advised that: (1) plaintiff failed to allege that her employer mistreated her as a byproduct of her race, color, sex, or national origin; and (2) that Title VII cannot be brought against any individual defendants. *Id.* Judge Dancks further recommended that, where plaintiff has alleged any causes of action under state law, that this Court decline to exercise supplemental jurisdiction if all claims over which a federal court would have jurisdiction are dismissed. *Id.* at 9–10. Finally, Judge Dancks also denied plaintiff's motion to file documents electronically in ECF without prejudice. *Id.*

---

[2]    Upon review of plaintiff's IFP Application, Judge Dancks concluded that she was not persuaded that plaintiff is unable to pay the cost of these proceedings or that payment of the filing fee would constitute a financial hardship for plaintiff. Dkt. No. 7 at 3.

[3]    Instead, Judge Dancks found that the defendants appear to be one private business and three individual private parties. This Court agrees.

Plaintiff has not lodged objections and the time period in which to do so has expired. *See* Dkt. No. 7. Upon review for clear error, Judge Dancks' R&R is accepted and will be adopted in all respects. *See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 7) is ACCEPTED and ADOPTED in all respects;

2. Plaintiff's IFP Application (Dkt. No. 2) is DENIED;

3. Plaintiff's complaint (Dkt. No. 1) is DISMISSED without prejudice pursuant to 28 U.S.C. 1915(e)(2)(B)(ii);

**\*2** 4. Plaintiff may file an amended complaint which cures the pleading defects identified in Judge Dancks' R&R;

5. Plaintiff shall have thirty (30) days in which to file an amended complaint [4] that conforms with the instructions set forth both in Judge Dancks' R&R and this Order and pay the filing fee of $405.00 if they wish to proceed in this action;

[4]    The amended complaint must comply with Federal Rules of Civil Procedure ("Rules") 8 and 10. Plaintiff must set forth all of the claims she intends to assert and must demonstrate that a case or controversy exists between her and the defendants which plaintiff has a legal right to pursue and over which this Court has jurisdiction. Plaintiff must clearly set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts. Any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)). Any exhibits that Plaintiff wishes the Court to consider going forward, including her right-to-sue letter, must be attached to the amended complaint. Piecemeal pleadings are not permitted. *See* Dkt. No. 6.

6. If plaintiff chooses not to file an amended complaint and pay the filing fee of $405.00 at the expiration of this thirty (30) day period, the Clerk of the Court is directed to enter a judgment dismissing this action without further Order of the Court; and

7. The Clerk of the Court is directed serve a copy of this Order on plaintiff by regular mail.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2025 WL 1076883

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)
|
Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

### REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, United States Magistrate Judge

### I. In Forma Pauperis

**\*1** Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint.[1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

---

[1]   The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

[2]   Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

### II. Initial Review

### A. Legal Standards

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.

§ 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

> There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

**\*2** Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too heavy a burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which

the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."
Id. (citations omitted).

 **\*3**  This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999)[3] (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

[3]     Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

### B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983. See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel."[4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

[4]     Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of character [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

**\*4** Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga District Attorney's Office, and the Supreme Court Appellate Division Third department. \*\* This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts [5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

[5]     Plaintiff did not provide any transcripts.

## C. Discussion [6]

[6]     As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

### 2. Heck v. Humphrey

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

**\*5** As this Court, citing the District of Connecticut, has set forth:

In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

[ ]

Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at \*3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards, No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at \*7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at \*7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/ or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

[7] The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a Heck dismissal. The undersigned has included the Heck review for sake of completeness.

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge" [8] such claims would be barred by judicial immunity.

[8] Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged

Case 1:25-cv-00971-AJB-TWD    Document 3    Filed 10/10/25    Page 30 of 74

violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by Rooker-Feldman, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by Younger. See Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), report and recommendation adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the Rooker-Feldman doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); see also Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

**\*6**   "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Id. (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

**\*7**   In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ML), 2021 WL 1406649, at *5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest

that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

> Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).

> Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at *5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at *5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

[9]    Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

### III. Conclusion

**\*8**  It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH**

2024 WL 4870495

**PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

[10]     The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

[11]     If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Slip Copy, 2024 WL 4870495

---

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

2025 WL 247901
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, Interim Montgomery County Judge; Tatiana N. Coffinger,

County/Family/Surrogate's Court Judge; Honorable Felix Catena, Retired Administrative

Law Judge; and Samuel V. Maxwell, Esq., Assistant District Attorney, Defendants.

1:24-CV-847 (MAD/PJE)
|
Signed January 21, 2025

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

# ORDER

Mae A. D'Agostino, United States District Judge:

 **\*1**  Plaintiff commenced this action on May 6, 2024, asserting that Defendants violated his due process and speedy trial rights, and that he received ineffective assistance of counsel in an underlying state criminal action. *See* Dkt. No. 1. In a Report-Recommendation and Order dated November 21, 2024, Magistrate Judge Hummel granted Plaintiff's request to proceed *in forma pauperis* and conducted an initial review of the complaint. *See* Dkt. No. 8. In the Report-Recommendation and Order, Magistrate Judge Hummel concluded that, in addition to the complaint being subject to dismissal for failure to comply with Rule 8 of the Federal Rules of Civil Procedure, Plaintiff's due process, speedy trial, and ineffective assistance of counsel claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Plaintiff's underlying state court conviction has not been reversed on direct appeal or otherwise expunged. *See id.* at 8-10. Moreover, the Report-Recommendation and Order recommended dismissal of the claims against Defendants Smrtic, Coffinger, and Catena since they are barred by absolute judicial immunity. *See id.* at 10-12. To the extent Plaintiff is attempting to assert a claim against the Appellate Division, Third Department, Magistrate Judge Hummel found that the claim is barred by Eleventh Amendment immunity because the Appellate Division " 'is merely an agency or arm of New York State." *Id.* at 12-13 (quotation omitted). Finally, Magistrate Judge Hummel recommended that the claims against Defendant Maxwell be dismissed because he is protected by prosecutorial immunity. *See id.* at 13-14. Plaintiff has not objected to the Report-Recommendation and Order.

When a party files specific objections to a magistrate judge's report-recommendation, the district court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he] presented to the magistrate judge," the court reviews those recommendations for clear error only. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

In the present matter, the Court finds that Magistrate Judge Hummel correctly determined that Plaintiff's complaint must be dismissed. Plaintiff's complaint makes clear that his claims stem from alleged violations of his rights that occurred during an underlying state criminal case. *See* Dkt. No. 1 at 3-4; Dkt. No. 7 at 4. Since Plaintiff's criminal conviction has not been reversed,

expunged by executive order, or called into question by a federal court's issuance of a writ of habeas corpus, Plaintiff's claims brought pursuant to Section 1983 are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Strong v. Watson*, No. 1:22-cv-552, 2023 WL 8439445, *14-15 (W.D.N.Y. Sept. 26, 2023) (dismissing the plaintiff's claims of malicious prosecution, conspiracy, speedy trial violations, denial of due process, and denial of equal protection under *Heck* because the claims "all seek to impugn the validity of his underlying state court criminal charges").

**\*2** Magistrate Judge Hummel also correctly determined that, in the alternative, the claims against the named Defendants are subject to dismissal based on absolute judicial and prosecutorial immunity. The allegations against Defendants Smrtic, Coffinger, and Catena make clear that these individuals were acting in their judicial capacities and that their actions were not taken in the absence of jurisdiction. Accordingly, they are entitled to absolute judicial immunity. *See Ceparano v. Southampton Just. Ct.*, 404 Fed. Appx. 537, 539 (2d Cir. 2011). As to Defendant Maxwell, Plaintiff has alleged that he withheld exculpatory evidence in the underlying criminal matter. Since this conduct clearly involves "prosecutorial activities 'intimately associated with the judicial phase of the criminal process,' " Defendant Maxwell is entitled to absolute prosecutorial immunity. *See Barr v. Abrams*, 810 F.2d 358, 360-61 (2d Cir. 1987) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Additionally, to the extent Plaintiff has attempted to assert claims against the Appellate Division, Third Department, the claims must be dismissed because the Third Department is an arm of New York State and is entitled to Eleventh Amendment immunity. *See Benyi v. New York*, No. 3:20-cv-1463, 2021 WL 1406649, *5 (N.D.N.Y. Mar. 23, 2021) (citation omitted).

Finally, the Court agrees with Magistrate Judge Hummel that, because it is clear that the issues with Plaintiff's complaint are substantive and not something that can be corrected by better pleading, Plaintiff will not be afforded an opportunity to amend his complaint. *See Phillips v. New York*, No. 5:13-cv-927, 2013 WL 5703629, *5 (N.D.N.Y. Oct. 17, 2013) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Hummel's November 21, 2024, Report-Recommendation and Order (Dkt. No. 8) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED without leave to amend**; and the Court further

**ORDERS** that Plaintiff's motion for permission to file electronically (Dkt. No. 4) and motion to appoint counsel (Dkt. No. 5) are **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 247901

---

End of Document © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

2024 WL 1016392

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Willie Thomas GOSIER, Plaintiff,

v.

David J. COLLINS, et al., Defendants.

6:23-cv-1485 (DNH/TWD)

|

Signed March 8, 2024

**Attorneys and Law Firms**

WILLIE THOMAS GOSIER, Plaintiff, pro se, 22-B-2574, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## I. INTRODUCTION

**\*1** The Clerk has sent to the Court for review a *pro se* civil rights complaint filed by Willie Thomas Gosier ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting claims arising out of June 11, 2023, traffic stop in Rome, New York. (Dkt. No. 1.) Plaintiff has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.)

## II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

At the time Plaintiff commenced this action, he was an inmate at the Oneida County Correctional Facility. (Dkt. Nos. 1, 2.) Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. [1] Based on that review, it does not appear Plaintiff had acquired three strikes for purposes of Section 1915(g) as of the date this action was commenced. [2]

---

[1]    *See* http://pacer.uspci.uscourts.gov (last visited Mar. 8, 2024).

[2]    *See Gosier v. Oneida Cnty. District Atty's Office*, No. 6:23-cv-01118 (DNH/TWD) (N.D.N.Y. filed on Sept. 1, 2023; closed on Nov. 2, 2023) ("*Gosier I*"); *Gosier v. Utica Police Dep't*, No. 6:23-cv-01119 (DNH/TWD) (N.D.N.Y. filed on Sept. 1, 2023) ("*Gosier II*"); *Gosier v. Oneida Cnty. Corr. Fac.*, No. 9:23-cv-01134 (DNH/CFH) (N.D.N.Y. filed on Sept. 5, 2023) ("*Gosier III*"); *Gosier v. Paolozzi*, No. 9:23-cv-01135 (GTS/TWD) (N.D.N.Y. filed on Sept. 5, 2023;

**Gosier v. Collins, Not Reported in Fed. Supp. (2024)**

2024 WL 1016392

closed on Jan. 30, 2024) ("*Gosier IV*"). The Court notes *Gosier I* and *Gosier IV* were *sua sponte* dismissed on initial review and Plaintiff has been granted leave to file amended complaints in *Gosier II* and *Gosier III*.

Upon review of Plaintiff's IFP application, the Court finds Plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in this District. (Dkt. Nos. 2, 3.) Accordingly, Plaintiff's IFP application is granted. [3]

[3] "Although an indigent, incarcerated individual need not prepay the filing fee at the time ... of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at \*1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)). Plaintiff should also note that although his motion to proceed IFP has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. SUFFICENCY OF THE COMPLAINT

### A. Standard of Review

**\*2** Having found Plaintiff meets the financial criteria for commencing this action IFP, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [4]

[4] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court looks to the Federal Rules of Civil Procedure. Rule 8 provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10 provides in pertinent part that: "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, No. 22-CV-1248 (MAD/DJS), 2022 WL 17517312, at \*2 (N.D.N.Y. Dec. 8, 2022) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the Court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing

*Twombly*, 550 U.S. at 555). Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

**B. Background**

**\*3** The complaint in this action, brought against defendants David J. Collins, Chief of Police of the Rome Police Department, and two unknown police officers, consists of two form complaints—one on the form complaint for civil rights violations pursuant to 42 U.S.C. § 1983 and one on the form complaint for *pro se* prisoner complaints—and four attached narrative pages. (Dkt. No. 1.) The narrative section spans five handwritten pages and is essentially one paragraph with limited punctuation. *See id.* at 8-13. [5] The Court will construe the allegations in the complaint with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"). The following facts are taken from Plaintiff's complaint.

[5]     The Court will refer to the CM/ECF pagination when citing to the complaint. Unless otherwise indicated, excerpts from the complaint are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

On June 11, 2023, between the hours of 6:00 a.m. and 5:00 p.m., Plaintiff was "stopped" by Rome Police Officers "John Doee and John Doee (the "defendant police officers") in the City of Rome for "speeding" near the Colonial Laundromat. *Id.* at 8. The defendant police officers claimed Plaintiff was going "50 in a 30 zone." *Id.* But Plaintiff "was only doing 35 in a 30 zone which is legal." *Id.* Plaintiff believes he was "targeted and labeled" because he is a young "black mixed person." *Id.* at 11. Plaintiff claims when a "person of color" has "valuable things" like a car, "they ... label you as a drug dealer or a person who conduct's crime." *Id.*

During the traffic stop, the defendant police officers "searched" Plaintiff's name, told Plaintiff he "was under suspention," and instructed him to "get out of [the] car." *Id.* at 8. Plaintiff was "unlawfully" handcuffed, and the defendant police officers conducted a "patdown search" and "searched" the car. *Id.* He was "placed" in the back of the patrol car and "witntnessed" the defendant police officers "pull" his female friend out of the car. *Id.* at 8-9. While holding her arms, "one officer pulled her pant's/panties a way from her body" and "the other reached into her pant's/panties and pulled some thing out completely illegal search." *Id.* at 9. They then took Plaintiff's "book bag's out of the car and trunk 1 book bag was her's with personal paper's, document's item's and looked thru it all[.]" *Id.* "They even took our cell phones" and "searched thru them with no warrent." *Id.* "Still to this date have not gotten my property back none of it they impounded my car. [6] *Id.*

[6]     Plaintiff was able to "get" his car "out" but it "cost me a lot" on a Sunday. (Dkt. No. 1 at 9.) But when he picked up his car, he "had a flat tire and a dent on the passenger side .. [and] had to pay to get inside of car done due to coffiee being spilt on ... swade seats and glitter being all over." *Id.*

Plaintiff claims "driving under a suspention is a misdemeaner and dose not justify handcuffing or conducting a pat down search." *Id.* at 12. "It was a complete unlawful stop and all evidence need's to be suppressed." *Id.*

When Plaintiff "arrived at RPD" on June 11, 2023, the "RPD" did not read Plaintiff his *Miranda* rights, and he was "interrogated" without a lawyer being present and without being told he could have a lawyer. *Id.* at 9-12. "They" asked him questions like, "why was i in Rome what was i doing where did i go in rome why how long ect." *Id.* at 12.

A "couple" of months later, Plaintiff was "charged with what they found in her pant's/panties." *Id.* at 9. On July 15, 2023, he also was "charged with criminal possession of weapon 2nd: loaded firearm-other than person's home/business which charge is still pending against me till this day." *Id.* at 9-10.

**\*4** Plaintiff alleges the "Rome Police Officers and Chief of Police all took part in such conduct and letting such conduct commence" and violated his constitutional rights. *Id.* at 10. Plaintiff claims "they" had "no ground's to pull me over" and the

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-00971-AJB-TWD    Document 3    Filed 10/10/25    Page 38 of 74

2024 WL 1016392

defendant police officers "should have had a female cop come and conduct that search" of his female friend. *Id.* at 9. "But even so it would still have been unlawful due to them not having probable cause to search me, my car, or my friend what so ever." *Id.* According to Plaintiff, "it is 100% legal" to drive "35 in a 30 zone" therefore, the stop was "1000% not a valid traffic stop at all" and that he "did not [break] any traffic violations or rule/law's." *Id.* at 10. Plaintiff further claims "it is said in supreme and other higher courts that you do not need a license to drive a car, SUV, truck in the United States ... it is protected by my con. Amendment right travel 4 th, 5 th amendment rights's." *Id.*

In his prayer for relief, Plaintiff seeks $2,000,000 and "for the officer's to be charged and procicuted for act's and investigate RPD misconduct." *Id.* at 4,13.

### C. Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (citations omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (finding that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").

"Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To establish liability against a government official under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Moreover, the theory of respondeat superior is not available in a section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Instead, "[t]he violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618.

## IV. ANALYSIS

The Court construes the allegations in the complaint with the utmost leniency. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers."). Upon review and for the reasons below, the Court finds Plaintiff's complaint fails to comply with the basic pleading requirements and fails to state a claim. Accordingly, the Court recommends dismissal of the complaint in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### A. Rules 8 and 10

A complaint is subject to dismissal if its "form or substance prevents the defendant from forming a 'fair understanding' of the plaintiff's allegations or otherwise prejudices the defendant in responding to the complaint." *Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, 51 F. Supp. 3d 319, 345 (S.D.N.Y. 2014). Ultimately, a complaint must give "fair notice" to the defendants. *See Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("The function of pleadings under the Federal Rules is to give fair notice of the claims asserted." (internal quotation marks omitted)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

In this instance, Plaintiff's rambling complaint consists almost entirely of legal conclusions, rather than well-pleaded factual allegations. As explained in more detail below, Plaintiff's complaint does not comply with Rule 8 because Plaintiff does not make a short and plain statement showing that he is entitled to relief from the named defendants. Additionally, Plaintiff's complaint does not comply with Rule 10 because it lacks numbered paragraphs, each limited as far as practicable to a single set of circumstances.

### B. Official Capacity Claims

**\*5** Plaintiff's complaint does not specify whether he intends to bring claims against the named defendants in their individual or official capacities. "A claim asserted against an individual in his official capacity ... is in effect a claim against the governmental entity itself, rather than a suit against the individual personally, for 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 n.55 (1978)); *Bryant v. Maffucci*, 923 F.2d 979, 986 (2d Cir. 1991) ("In bringing suit against defendants in their official capacities, Bryant has effectively brought suit against the governmental unit that employs them, Westchester County[.]"). Thus, the Court considers whether Plaintiff has stated constitutional claims against the City of Rome, who is the real party in interest.

"A municipality is liable under section 1983 only if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (citing *Monell*, 436 U.S. at 691). Thus, to hold a municipality liable under Section 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

Here, Plaintiff's claim construed against the City of Rome appears to stem from an isolated instance of alleged unconstitutional conduct by the defendant police officers in the course of a traffic stop. Such an isolated act by a non-policymaking municipal employee is "generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify liability." *Matusick*, 757 F.3d 31 at 62 (2d Cir. 2014) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 82 (2d Cir. 2012)). But such isolated instances would be a basis for municipal liability if they were done

> pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses.

*Jones*, 691 F.3d at 81. The only factual allegations potentially bearing on any such basis for municipal liability are the allegations that Plaintiff is "being targeted" for being a "young and black mixed person of color." (Dkt. No. 1 at 11.) Plaintiff states:

> i feel this is at most descrimination at it's finest and racel profiling. That's a huge violation of my con. Amendment right's. it's not okay or right one bit. Just because im a young black mixed person of color. it is not right that RPD get's a way with thing's like this all the time, nothing ever get's done about it. They do as they please and they find it okay to do such conduct's its completely not okay or right for such act's. This need's to change it's not right at all, right is right wrong is wrong."

*Id.* at 12. The Court infers this is an allegation of racially motivated police conduct. Plaintiff also list "harassment" as a cause of action.[7] *Id.* at 13.

[7]    To the extent the complaint could be construed as asserting a verbal harassment claim, allegations of verbal harassment are insufficient to support a Section 1983 claim. *See Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ("allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged")); *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (holding that "verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional,

Gosier v. Collins, Not Reported in Fed. Supp. (2024)
Case 1:25-cv-00971-AJB-TWD    Document 3    Filed 10/10/25    Page 40 of 74

2024 WL 1016392

or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *see also Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases).

**\*6**  "The Second Circuit has admonished that courts should 'not condone racially motivated police behavior' and must 'take seriously an allegation of racial profiling.' " *Floyd v. City of New York*, 959 F. Supp. 2d 540, 660 (S.D.N.Y. 2013) (quoting *United States v. Davis*, 11 F. App'x 16, 18 (2d Cir. 2001)). In this case, however, Plaintiff's "general and conclusory" allegations are insufficient to establish any plausible claim of municipal liability. *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015). Plaintiff alleges no other specific conduct by City of Rome officials, nor does he cite any other facts or circumstances in support of any claim that a policy of racial profiling or racial animus exists in the City. Moreover, insofar as the complaint may allege that employees of the Rome Police Department violated Plaintiff's constitutional rights, those allegations fail to state a claim against the City of Rome because a municipality may not be liable on the basis of respondeat superior. *See Monell*, 436 U.S. at 691.

Accordingly, it is recommended that Plaintiff's official capacity claims be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. If Plaintiff intends to pursue claims against the City of Rome, he must name the City of Rome as a defendant in the list of parties and state facts suggesting that a City policy, custom, or practice caused the violation of his rights during or after the traffic stop.

### C. Individual Capacity Claims Against Defendant David J. Collins

It is well-settled that "[d]ismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at \*1 (N.D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at \*2 (S.D.N.Y. July 9, 1998)); *see also Crown v. Wagenstein*, No. 96-CV-3895, 1998 WL 118169, at \*1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

In this case, Plaintiff names David J. Collins as a defendant in the recitation of parties, but the complaint lacks any specific allegations of wrongdoing by this defendant. Rather, it appears Plaintiff has sued defendant Collins due to the supervisory position he holds. The only reference to defendant Collins in the body of the complaint is as follows, "Rome Police Officers and Chief of Police all took part in such conduct and letting such conduct commence violated my Con. Amendment right's 2nd, 4th, 5th, 14th. So i Willie T. Gosier's Jr's right's have been violated due to an illegal/unlawful stop they had no ground's to pull me over." (Dkt. No. 1 at 10.) Thus, the complaint does not include any plausible allegations of personal involvement by defendant Collins.

Accordingly, it is recommended that Plaintiff's Section 1983 claims against defendant Collins be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. If Plaintiff intends to pursue Section 1983 claims against defendant Collins, Plaintiff must sufficiently alleged defendant Collins' personal involvement in the claimed violations.

### D. Individual Capacity Claims Against Defendants John Doee # 1 and # 2

#### 1. Unlawful Search and Seizure

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. A police officer may briefly detain a suspect, consistent with the Fourth Amendment, when the officer has a reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

In the context of traffic laws, "reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009). Even a "minor" traffic violation meets this standard and provides probable cause for a stop. *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) (finding police had probable cause to arrest defendant for "not signaling lane changes"), *cert. denied*, 513 U.S. 877 (1994).

 **\*7** Here, Plaintiff's claims alleging violations of constitutional rights arising from the traffic stop are undermined by his own admissions in the complaint. [8] Specifically, Plaintiff claims he was pulled over for speeding. (Dkt. No. 1 at 8.) Contrary to Plaintiff's assertion, travelling over maximum speed limits is a violation of New York State Vehicle and Traffic Law, thus providing probable cause for the traffic stop. *See* N.Y. Veh. & Traf. Law § 1180(d).

[8]     As described above, Plaintiff also takes issue with the June 11, 2023, search of his female friend. However, a *pro se* plaintiff cannot bring any claims on behalf of any other plaintiff. *See Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (because *pro se* means to appear for oneself, a person may not appear on another person's behalf in the other's cause).

Though Plaintiff contends the reason cited by the defendant police officers was pretextual, the subjective intent of an officer performing a traffic stop is irrelevant. *United States v. Dhinsa*, 171 F.3d 721, 724-25 (2d Cir. 1998) ("[A]n officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance."); *see, e.g.*, *Aikman v. Cnty. of Westchester*, 491 F. Supp. 2d 374, 381 (S.D.N.Y. 2007) (dismissing the plaintiff's Fourth Amendment "racial profile claim" where the officers "had probable cause to believe [the plaintiff] violated New York traffic laws").

Once a lawful traffic stop based on probable cause has occurred, a police officer may make "ordinary inquiries incident to the traffic stop," and "[t]ypically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (alterations omitted). Additionally, if the traffic stop is lawful, neither the driver nor any passengers have a "Fourth Amendment interest in not being ordered out of the stopped vehicle." *Mollica v. Volker*, 229 F.3d 366, 369 (2d Cir. 2000). Indeed, "a police officer may as a matter of course, order" a passenger or a driver out of "lawfully stopped car." *Maryland v. Wilson*, 519 U.S. 408, 410 (1997) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (per curiam)).

Based on the information provided in the complaint, it appears the defendant police officers learned Plaintiff did not have a valid driver's license. Plaintiff alleges after the stop, the defendant police officers "searched my name they then returned told me i was under suspention which i was not under suspention told me get out of my car and unlawfully handcuffed me conducted a patdown search of me searched my car with out probable cause place me in the back of the patrole car." (Dkt. No. 1 at 8.) The defendant police officers also searched Plaintiff's friend and "some thing" was "pulled" from her "pant's/panties." *Id.* at 8-9. Plaintiff also accuses the defendant police officers of invading his "privacy" when they conducted a "pat down search," searched his car, and "took" his personal belongings including paperwork, documents, cell phones, and book bags without consent or a warrant. (Dkt. No. 1 at 3.) Plaintiff was then apparently taken to the Rome Police Department. *Id.* at 11-12. There are no allegations that the stop lasted any longer than necessary. As such, Plaintiff has not stated a constitutional claim concerning a prolonged and unconstitutional seizure. *See Rodriguez*, 575 U.S. at 354.

 **\*8** Insofar as Plaintiff claims that "driving under a suspention is a misdemeanor" and does "not justify handcuffing and or conducting a patdown search," and "you do not need a license to drive a car ... in the United States of America," Plaintiff is mistaken. (Dkt. No. 1 at 10, 12.) Under New York's Vehicle & Traffic Laws, a valid driver's license is required to operate a motor vehicle. *See* N.Y. Veh. & Traf. Law § 509; *see also id.* § 511 (prohibiting operating a car without a valid license). Thus, while the precise details are unclear, it appears the defendant police officers likely had probable cause to believe Plaintiff had committed a criminal offense. And a search incident to an arrest, "constitutes an exception to the warrant requirement" imposed by the Fourth Amendment. [9] *Riley v. California*, 573 U.S. 373, 382 (2014).

9

In New York a person is guilty of Criminal Possession of a Weapon in the second degree if he or she possesses a loaded firearm and does not have a license to possess such a firearm. *See Bannister v. Luis*, No. 18-CV-7285, 2022 WL 19402512, at *45 (E.D.N.Y. Feb. 16, 2022) (citing N.Y. Penal Law § 265.03), *report and recommendation adopted as modified*, 2023 WL 2325680 (E.D.N.Y. Mar. 2, 2023). Under New York law, the existence of a firearm in an automobile creates a permissive presumption that all occupants of the vehicle have common constructive possession of the firearm, absent certain statutory exceptions which are inapplicable here. *Id.* "If a jury may make a presumption of possession under the law, it is reasonable for a police officer to do the same." *Id.* Thus, regardless of whether the firearm was found on the Plaintiff's person or in his car, the officers had probable cause for his arrest.

Additionally, the automobile exception to the warrant requirement of the Fourth Amendment permits officers to "conduct a warrantless search of a vehicle if they have probable cause to believe it contains contraband or other evidence of a crime." *United States v. Wilson*, 699 F.3d 235, 245 (2d Cir. 2012). Probable cause requires only a "fair probability" that evidence of a relevant violation will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When the exception applies, officers may search any area of the vehicle in which they have "probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991); *see also United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."); *see also United States v. Harris*, No. 21-CR-376, 2022 WL 13798289, at *2 (E.D.N.Y. Oct. 21, 2022).

In sum, based on the information provided in Plaintiff's complaint, it appears the defendant police officers likely had probable cause to stop and arrest Plaintiff. Armed with probable cause, the search of Plaintiff's person and vehicle appears to have been a lawful search incident to arrest. *See United States v. Jenkins*, 496 F.2d 57, 79 (2d Cir. 1974) (finding search prior to arrest to be lawful "as long as probable cause to arrest existed at the time of the search"); *see generally Thornton v. United States*, 541 U.S. 615, 617 (2004) (holding search of vehicle's passenger compartment to be contemporaneous incident of arrest, though driver arrested outside vehicle).

Accordingly, it is recommended that Plaintiff's Section 1983 illegal search and seizure claim against the defendant police officers be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [10]

10

Plaintiff claims he was "charged" with "what they found" on his friend's person and also charged with "possession of a weapon 2nd: loaded firearm-other than person's home/business." (Dkt. No. 1 at 9-10.) Plaintiff states "the loaded firearm charge" is "still pending against me till this day." *Id.* at 10. The Court notes, however, that under abstention principles, the Court typically refrains from intervening in a state-court criminal proceeding. *See, e.g.*, *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013). Moreover, to the extent that Plaintiff seeks the remedy of "suppression" of any items seized during the search, that remedy is simply inapplicable in a § 1983 suit. *See Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999) ("The fruit of the poisonous tree doctrine ... is inapplicable to civil § 1983 actions.").

### 2. False Arrest

**\*9**  "A [Section] 1983 claim for false arrest[ ] resting on the Fourth Amendment ... is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). "Under New York law, a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification." *Id.* Probable cause "is a complete defense to an action for false arrest" brought under New York law or section 1983. *Id.* (citation omitted). Police officers have probable cause to arrest when they possess "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (collecting cases); *see, e.g.*, *Johnson v. Harron*, No. 91 Civ. 1460, 1995 WL 319943, at *9 (N.D.N.Y. May 23, 1995) (concluding that DMV computer information showing driver's license was suspended established probable cause for arrest).

Read liberally, the complaint may raise a claim for false arrest. Plaintiff claims he was handcuffed, placed in the patrol car, was taken to the Rome Police Department, and was not read his *Miranda* rights. (Dkt. No. 1 at 8-12.) But the complaint focuses on the initial traffic stop and search and does not include details about the basis for the arrest that would allow the Court to evaluate whether he was arrested without justification. Accordingly, it is recommended that Plaintiff's Section 1983 false arrest claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [11]

[11]    If Plaintiff intends to bring such a claim, he should amend his complaint to add facts establishing that he was arrested without justification and the disposition of any charges.

### 3. Excessive Force

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). To succeed on an excessive force claim, "a plaintiff must ultimately demonstrate that the defendant's use of force was objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 491 (N.D.N.Y. 2017) (internal quotations omitted). The "objective reasonableness" inquiry is "case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy*, 623 F.3d at 96 (citing *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

Here, "excessive force" is listed as a cause of action. (Dkt. No. 1 at 13.) Plaintiff claims he was "unlawfully pulled out of [his] car," "handcuffed" and subjected to a "pat down search." *Id.* at 8. With this allegation and nothing more, there are simply not enough facts present to establish a plausible excessive force claim. *See Burroughs v. Petrone*, 138 F. Supp. 3d 182, 214 (N.D.N.Y. 2015) (excessive force claim based on rough pat and frisk and push by officers, without other facts or injury alleged, dismissed); *see also Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 406 (S.D.N.Y. 2009) (declining to find any constitutional violation from plaintiff's allegations of officers' forceful behavior, including a "single push," during the time he was handcuffed).

Accordingly, it is recommended that Plaintiff's Section 1983 excessive force claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 4. Due Process

The complaint lists "5th Due Prosses" as a claim and Plaintiff states "I also have a privilege aganced self incrimination suspect's statement's, comment's remark's before *Miranda* rights cant be used in court." (Dkt. No. 1 at 12, 13.) "While a defendant has a constitutional right not to have a coerced statement used against him, the failure to provide *Miranda* warnings does not constitute a Fifth Amendment violation or a violation of federal law." *Jallow v. Geffner*, No. 23-CV-3969, 2024 WL 37073, at *10 (S.D.N.Y. Jan. 2, 2024) (citing *Vega v. Tekoh*, 597 U.S. 134, 142-152 (2022)); *see also Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) (relying on *New York v. Quarles*, 467 U.S. 649, 654 (1984) (a defendant does not have a constitutional right to receive *Miranda* warnings because warnings are only a procedural safeguard designed to protect a person's right against self-incrimination)).

**\*10**  Generally, "no cause of action exists under 42 U.S.C. § 1983 for *Miranda* violations." *Gentry v. New York*, No. 1:21-CV-319 (GTS/ML), 2021 WL 3037709, at *7-8 (N.D.N.Y. June 14, 2021), *report and recommendation adopted*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021) (quoting *Hernandez v. Llukaci*, No. 16-CV-1030, 2019 WL 1427429, at *7 (N.D.N.Y. Mar. 29, 2019) (Hurd, J.) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003))). "The failure to inform a plaintiff of his rights under *Miranda*, 'does not, without more, result in § 1983 liability.' " *Id.* (quoting *Deshawn E. v. Safir*, 156 F.3d at 346). "The

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-00971-AJB-TWD    Document 3    Filed 10/10/25    Page 44 of 74

2024 WL 1016392

remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.' " *Id.* (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995)) (internal quotations omitted). However, " '[a] *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declarant in any fashion.' " *Id.* (quoting *Deshawn E. v. Safir*, 156 F.3d at 348 (internal citations omitted)).

Here, the complaint does not allege any facts that would plausibly suggest police coercion led to inculpatory statements. As a result, it is recommended that Plaintiff's Section 1983 due process claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 5. Right to Travel

The complaint lists "5th right to travel" as a claim. (Dkt. No. 1 at 3, 13.) "The Constitution protects a fundamental right to travel within the United States," *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 99 (2d Cir. 2009), but "travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on that travel simply do not amount to the denial of a fundamental right[.]" *Scott v. Crossway*, No. 1:22-CV-500 (BKS/CFH), 2022 WL 16646531, at *10 (N.D.N.Y. Nov. 3, 2022) (quoting *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (alterations, citations, and quotation marks omitted)), *report and recommendation adopted*, 2023 WL 34543 (N.D.N.Y. Jan. 4, 2023);

Even liberally construed, Plaintiff has not alleged any facts to suggest a violation of his constitutional right to travel. Plaintiff's allegations regarding his right to travel relate to the traffic stop and seizure of his vehicle, which is akin to his illegal search and seizure claim. *See, e.g.*, *Wellington v. Foland*, No. 3:19-CV-0615 (GTS/ML), 2019 WL 3315181, at *6 (N.D.N.Y. July 24, 2019), *report and recommendation adopted*, 2019 WL 6485157 (N.D.N.Y. Dec. 3, 2019); *Bey v. D.C.*, No. 17-CV-6203, 2018 WL 5777021, at *6 (E.D.N.Y. Nov. 1, 2018) (dismissing the plaintiff's "right to travel claim" where the plaintiff retained his ability and constitutional right to travel even if "inconvenienced" by the seizure of his motor vehicle."); [12] *see also Johnson El v. Bird*, No. 19-CV-5102, 2020 WL 5124920, at *5 n.8 (S.D.N.Y. Aug. 31, 2020) ("To the extent Plaintiff means to argue that traffic enforcement violates his right to travel, that claim is dismissed as frivolous.") (citing *Annan v. State of N.Y. Dep't of Motor Vehicles*, No. 15-CV-1058, 2016 WL 8189269, at *5 (E.D.N.Y. Mar. 2, 2016), *aff'd*, 662 F. App'x 85 (2d Cir. 2016) (summary order)).

[12]    To the extent Plaintiff claims the defendant police officers deprived him of a property interest by impounding his car, Plaintiff has not pled facts sufficient to establish that he was deprived of that interest without due process. *See, e.g.*, *Hawthorne by Hawthorne v. Cnty. of Putnam*, 492 F. Supp. 3d 281, 304 (S.D.N.Y. 2020) (noting that where the defendants' impounded the plaintiff's car following a traffic stop the conduct did not implicate procedural due process concerns); *Vasquez v. Yadali*, No. 16-CV-895, 2020 WL 1082786, at *12 (S.D.N.Y. Mar. 5, 2020) (noting that the plaintiff fails to allege the inadequacy of any post-deprivation hearings following the impoundment of his vehicle); *Domeneck v. City of New York*, No. 18-CV-7419, 2019 WL 5727409, at *10 (S.D.N.Y. Nov. 5, 2019) (dismissing plaintiff's Fourteenth Amendment claim regarding the deprivation of his vehicle because the plaintiff has not plausibly alleged that the process he received was insufficient).

**\*11**  The Court therefore recommends dismissing Plaintiff's Section 1983 right to travel claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 6. Right to Bear Arms

The complaint lists "2nd Bear Arm's" as a claim. (Dkt. No. 1 at 13.) The "Second Amendment protects 'an individual right to keep and bear arms.' " *District of Columbia v. Heller D.C. v. Heller*, 554 U.S. 570, 595 (2008). But "[l]ike most rights, the right

Gosier v. Collins, Not Reported in Fed. Supp. (2024)
Case 1:25-cv-00971-AJB-TWD    Document 3    Filed 10/10/25    Page 45 of 74
2024 WL 1016392

secured by the Second Amendment is not unlimited" and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. For example, the Second Amendment allows "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 627-28.

Here, Plaintiff's conclusory allegation regarding his right to "Bear Arm's" provided by the Second Amendment is insufficient to state a plausible claim for relief given the numerous limitations on an individual's right to bear arms. *See, e.g.*, *McClenic v. Shmettan*, No. 15-CV-00705, 2016 WL 3920219, at *8 (E.D.N.Y. July 15, 2016) (dismissing the plaintiff's conclusory allegation that defendant detectives violated his Second Amendment right "to keep and bear arms" where, *inter alia*, was charged with criminal possession of a weapon second degree in a felony complaint); *see also Partin v. Gevatoski*, No. 6:19-CV-1948-AA, 2020 WL 4587386, at *4 (D. Or. Aug. 10, 2020) ("The mere occurrence of a firearm seizure during a traffic stop, however, is not enough to establish a Second Amendment violation. Police seize and confiscate firearms routinely, and this Court will not presume that each and every one of those seizures is an automatic Second Amendment violation without specific facts indicating such.").

Accordingly, the Court recommends dismissing Plaintiff's Section 1983 right to bear arms claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [13]

[13]    *See also supra* note 10 and accompanying text.

### E. Private Prosecution

To the extent Plaintiff seeks an order from this Court directing the defendants to be "charged and prosicuted for Act's and investigate RPD misconduct," (Dkt. No. 1 at 3, 13), he is not entitled to such as order because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Neither Plaintiff nor the Court can direct prosecutors to initiate a criminal proceeding against any defendant because prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court[.]" *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972).

### F. Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having recommended dismissal of the federal claims of which the Court has original jurisdiction, it is also recommended that the District Court decline to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.' ") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

### V. OPPORTUNITY TO AMEND

 **\*12**  Generally, before the Court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the Court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

For reasons set forth above, the Court finds Plaintiff's complaint is subject to dismissal in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1) for failure to state a claim. However, in light of his *pro se* status, prior to outright dismissal of this action, the Court recommends that Plaintiff be given an opportunity to amend his pleading.

Plaintiff is advised that, should the District Court permit Plaintiff to file an amended complaint, and if he chooses to avail himself of an opportunity to amend, such amended pleading must cure the defects set forth above. [14] Specifically, the pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). The body of the pleading must contain sequentially numbered paragraphs containing only one act of alleged misconduct per paragraph. Fed. R. Civ. 10. No portion of any prior complaint shall be incorporated into the amended complaint and piecemeal pleadings are not permitted.

[14]   Plaintiff should not submit an amended complaint before the District Court issues a Decision and Order on this Report-Recommendation. As noted below, however, Plaintiff may file written objections to this Court's Report-Recommendations.

The Court notes that in *Gosier II*, Plaintiff alleged he was "pulled over" on June 11, 2023, by officers of the Utica Police Department "without probable cause and proceeded to illegally search [his] vehicle." *Gosier II*, No. 6:23-cv-01119 (DNH/TWD), ECF Dkt. No. 1 at 9. Plaintiff also alleged he was "maliciously prosecuted" and "arrested and charged with Criminal Possession of a Controlled Substance 7th and Aggravated Unlicensed Operation of Motor Vehicle 3rd." *Id.* Plaintiff's original complaint was *sua sponte* dismissed on initial review with leave to amend. *Id.*, ECF Dkt. Nos. 10, 12. On February 5, 2024, Plaintiff's request for an extension of time until March 16, 2024, to submit his amended complaint was granted. *Id.*, ECF Dkt. No. 19. At this juncture, it is unclear whether the subject traffic stop in *Gosier II* is the same traffic stop at issue in this action. Plaintiff should explain the relationship, if any, between the June 11, 2023, traffic stop at issue in this action and the June 11, 2023, traffic stop at issue in *Gosier II*.

## VI. CHANGE OF ADDRESS

According to information publicly available on the website maintained by the New York State Department of Corrections and Community Supervision ("DOCCS"), Willie Gosier (DIN 22B2574) was released from custody on parole on February 26, 2024. [15] Plaintiff is reminded that he must update his address with the Court immediately upon relocating. For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes. "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." L.R. 41.2(b).

[15]   *See* http://nysdoccslookup.doccs.ny.gov (last visited Mar. 8, 2024).

## VII. CONCLUSION

 **\*13  WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**, and it is further

**RECOMMENDED** that Plaintiff's complaint be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) with **LEAVE TO AMEND**; and it is further

**RECOMMENDED** that the District Court decline to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

Gosier v. Collins, Not Reported in Fed. Supp. (2024)
Case 1:25-cv-00971-AJB-TWD    Document 3    Filed 10/10/25    Page 47 of 74
2024 WL 1016392

**ORDERED** that Plaintiff is required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; the failure to do so will result in the dismissal of his action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [16] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

[16]    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**


**All Citations**

Not Reported in Fed. Supp., 2024 WL 1016392

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1307035

Case 1:25-cv-00971-AJB-TWD    Document 3    Filed 10/10/25    Page 48 of 74

2024 WL 1307035
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Willie Thomas GOSIER, Plaintiff,

v.

David J. COLLINS et al., Defendants.

6:23-CV-1485
|
Signed March 27, 2024

**Attorneys and Law Firms**

WILLIE THOMAS GOSIER, Plaintiff, Pro Se, 22-B-2574, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

**ORDER ON REPORT & RECOMMENDATION**

DAVID N. HURD, United States District Judge

 **\*1**  On November 29, 2023, *pro se* plaintiff Willie Thomas Gosier ("plaintiff"), who was recently released to State parole, filed this 42 U.S.C. § 1983 action alleging that the defendants violated his civil rights during a traffic stop in Rome, New York. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. Nos. 2, 3.

On March 8, 2024, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP Application and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with leave to amend. Dkt. No. 4.

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 4. Upon *de novo* review, the R&R is accepted and will be adopted. *See* 28 U.S.C. § 636(b)(1)(C).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with leave to amend;

3. Plaintiff shall have thirty (30) days in which to file an amended complaint that conforms with the specific instructions set forth in the R&R;

4. If plaintiff timely files an amended pleading, the Clerk is directed to return the matter to Judge Dancks for further review as appropriate;

5. If plaintiff does not timely file an amended pleading, the Clerk is directed to close this matter without further Order of the Court.

IT IS SO ORDERED.

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-00971-AJB-TWD    Document 3    Filed 10/10/25    Page 49 of 74

2024 WL 1307035

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1307035

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3460788
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Annamay SHIBLEY, et al., Plaintiffs,

v.

Jennifer BIXLEROND, et al., Defendants.

6:24-cv-0722 (BKS/TWD)
|
Signed July 16, 2024

**Attorneys and Law Firms**

ANNAMAY SHIBLEY, Plaintiff, pro se, 2452 Broad Street, Apt. 3, Frankfort, NY 13340.

CHRISTOPHER WHEELER, SR., Plaintiff, pro se, 2452 Broad Street, Apt. 3, Frankfort, NY 13340.

## REPORT-RECOMMENDATION AND ORDER

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

### I. INTRODUCTION

**\*1** The Clerk has sent to the undersigned for review a complaint submitted by *pro se* plaintiffs Annamay Shibley and Christopher Wheeler, Sr. ("Plaintiffs"), together with two applications to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 3, 4. For the reasons set forth below, the Court recommends the complaint be dismissed.

### II. IFP APPLICATIONS

Plaintiffs have not paid the statutory filing fee for this action and seek leave to proceed IFP. Dkt. Nos. 3, 4. Upon review, the Plaintiffs' IFP applications demonstrate economic need. *See id.* Therefore, Plaintiffs are granted permission to proceed IFP.

### III. COMPLAINT

Plaintiffs commenced the instant action utilizing the Court's form complaint for civil rights actions, asserting claims under 42 U.S.C. § 1983. *See* Dkt. No. 1 at 3.[1] The complaint lists four defendants: "Jennifer bixlerond" of the Oneida County Sheriff's Department;[2] the Department of Social Services ("DSS"); the Mohawk Valley Community Action Agency; and Heidi Garber. *Id.* at 2-3.

[1]    Citations to Plaintiffs' submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[2]    The Court notes, while Plaintiffs listed "Jennifer bixlerond" as "Defendant No. 1" on the second page of the complaint, *see* Dkt. No. 1 at 2, in a later portion of the same document, *see* Dkt. No. 1 at 4, and on both IFP applications, *see generally*, Dkt. Nos. 3, 4, Plaintiffs appear to refer to the same individual as "Jennifer Bixler."

Plaintiff Annamay Shibley states,[3] on February 2, 2021, "2 of my children were taken by CPS." *Id.* at 8. CPS accused her of "abusing my children even though the babysitter named Heidi garber was the one that abused my children and amidded it to

CPS." *Id.* "CPS wanted the babysitter my boyfriend and myself to take a lie detector test." *Id.* Garber "refused to take a test" but Shibley and her boyfriend agreed to take the test at the Oneida County Jail. *Id.* After she completed the test,

> they said I failed the test but when the officer showed me the test I did not see where I failed the test. But they still arrested me and I spent one night in jail but when I went to court the next day the judge released me and told me that there was not enough evidence to prove I did anything wrong.

*Id.* She later learned "the charges were dismissed and sealed." *Id.*

3    As discussed in greater detail below, the complaint is signed only by Annamay Shibley. *See* Dkt. No. 1 at 7.

Shibley avers "CPS did not have a warrant to remove my children from my care. I did not get a court date for the removal order of my children until a week and a half after my children were already removed." *Id.* She states she has "done everything that the cps workers wanted me to do" including "mental health councling, parenting class, anger management class, domestic violence classes and also find better housing for myself and my children." *Id.* Plaintiff also "had 2 more children" after the first two were removed from her home "and they did not have a warrant to remove them children both from St. Luke's hospital the days that they were born." *Id.*

**\*2** She has not abused any of her children, and seeks to have the children returned to her home, arguing "CPS should have never taken my children after they got the confession out of the babysitter." *Id.* at 9. Further, she "would like the babysitter held accountable for her actions." *Id.* Additionally, in October of 2023, "Laurie Ellis who used to work for Onidea County dss" entered Shibley's residence "without knocking and also after numerous times I told her she was not welcome into my house." *Id.* Plaintiff "had to call the police and make a police report on her once I made a police report she took herself off of my family court case." *Id.*

Shibley "was suppost to have home visits back in 2022 and they took them away all because someone lied and said that I took inappropite pictures of one of my children during a visit and also abused my child during a visit but yet that never happened." *Id.* The visit during which the alleged abuse occurred "was conducted at The House of good Shepard and I had many staff in and out of the room that cps tried to say it happened at." *Id.* Additionally, DSS did not have custody of the child Plaintiff allegedly abused at the time, as the child's biological father had custody. *Id.* "He had custody and then abandoned her and left her with his ex girlfriend. I then fought like no tomorrow to have the foster parents gain custody of her so she was back with her siblings and I now feel like that was a big mistake." *Id.*

From the day Shibley's four children entered foster care, the foster parents allowed the children to be hurt and have failed to contact her "until days after or not being fulted for it." *Id.* For example, one of the children "was bitten by a dog and could have been blind and they still have the dog, they want to get rid of the dog and that they have the dog locked up away from the kids." *Id.* However, it is "very unlikely that they are able to keep that dog away far from 11 kids all under 10 years old!" *Id.*

"DSS has not done everything to make sure I can get my children back, I think there goal for all children around the world is to human traffic them. They have been wanting to terminate my rights from the day they wrongfully took my children!" *Id.* at 10. Furthermore, "it's wrong that Christopher Wheeler, who has raised" two of the children from August 23, 2019, until February 24, 2021, "with out a problem is not allowed to see or talk to them just because he is a registered sex offender but yet cps had no problems with my children being in his care from Feb 11th of 2020 til they were removed." *Id.* "We had several cps cases called on us between that time and IF cps believed they were in danger why didn't cps remove the kids then." *Id.*

Plaintiff seeks to "have the phone records from cps and the House of good shepard pulled and listened to." *Id.* She states "I just want to be able to get my children back and I want to get paid for my pain and suffering I have been through. I have ptsd from all of this nonsense!" *Id.*

## IV. STANDARD OF REVIEW

Section 1915 of Title 28 requires a district court to dismiss an IFP complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

 **\*3** To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V. ANALYSIS

### A. Section 1983

Plaintiffs commenced this action pursuant to 42 U.S.C. § 1983, which "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y.) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To state a valid claim under § 1983, a plaintiff must allege the challenged conduct: (1) was attributable to a person acting under color of state law; and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). Even affording the complaint a liberal construction, Plaintiffs have failed to state a claim under § 1983 against any of the named defendants.

### 1. Oneida County Sheriff Jennifer Bixlerond

The first defendant identified in the Plaintiffs' complaint is Jennifer Bixlerond. Dkt. No. 1 at 2. Plaintiffs indicate Bixlerond is employed by the Oneida County Sheriff's Department and they seek to hold her liable in her official capacity. *See id.* Plaintiffs state "Jennifer Bixler was personally involved in the wrongful actions of" two of Shibley's children "being removed from my care." *Id.* at 4.

"[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005); *see also, e.g.*, *Polinski v. Oneida Cnty. Sheriff*, No. 6:23-CV-0316 (DNH/ML), 2023 WL 2988753, at *5 (N.D.N.Y. Apr. 18, 2023) ("A claim against [an] Oneida County Sheriff in his official capacity, is essentially a suit against the Oneida County Sheriff's Department.") (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007)), *report and recommendation adopted*, 2023 WL 3344060 (N.D.N.Y. May 10, 2023), *appeal dismissed*, No. 23-867, 2023 WL 8357375 (2d Cir. Oct. 12, 2023). However, a municipality such as Oneida County may be "liable under section 1983 only if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)) (additional citation omitted).

**\*4** "The policy or custom need not be memorialized in a specific rule or regulation," *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citations omitted), and "may be pronounced or tacit and reflected in either action or inaction." *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011). Municipal liability under *Monell* may be established by way of:

> (1) a policy formally adopted and endorsed by the municipality; (2) actions taken by policymaking officials that caused the particular deprivation alleged; (3) practices by subordinate officials that are not expressly authorized but are so widespread and consistent that policymakers must have been aware of them; or (4) a failure by policymakers to train or supervise that amounts to "deliberate indifference" to the rights of those who come into contact with the inadequately trained or supervised municipal employees.

*Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 729 (N.D.N.Y. 2020) (citing *Deferio v. City of Syracuse*, 770 F. App'x 587, 589 (2d Cir. 2019) (Summary Order)) (additional citation omitted). "Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of his constitutional rights." *Deferio*, 770 F. App'x at 590 (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).

In the instant complaint, Plaintiffs have failed to identify any municipal policy or custom or allege facts plausibly suggesting a basis for municipal liability. Therefore, they have failed to state a viable *Monell* claim, and dismissal as to Bixlerond is warranted. *See, e.g.*, *Polinski*, 2023 WL 2988753, at *5-7.

### 2. Department of Social Services, Grade B Supervisor

The complaint next identifies as a defendant the "Department of Social Services." Dkt. No. 1 at 2. Yet, "Grade b Supervisor" is listed as the department's "Job or Title" and the complaint references "Grade B supervisor ... Laurie Ellis." *Id.* at 4; *see also id.* at 9. Irrespective of whether Plaintiffs intend to pursue a claim against the Oneida County DSS or Ellis in her official capacity, however, the complaint fails to state a viable claim.

"Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit ... and no claims lie directly against the Department." *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) (citations omitted). Further, as explained above, Plaintiffs have failed to allege facts plausibly suggesting a basis for municipal liability as to Oneida County. *See supra* Section V.A.1. Therefore, to the extent Plaintiffs intend to state a claim against the Oneida County DSS, dismissal is warranted. *See, e.g.*, *White v. Syracuse Police Dep't*, No. 5:18-CV-1471 (GTS/DEP), 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) ("I would ordinarily recommend that, for the sake of judicial efficiency, the court substitute the ... [municipality] in place of the" municipal department, however, because the "plaintiff's complaint contains no factual allegations that would support a *Monell* claim against the" municipality, "I recommend dismissal of plaintiff's claims asserted against the" department.), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019).

 **\*5**  Alternatively, to the extent Plaintiffs intended to state a claim against Oneida County DSS Supervisor Laurie Ellis in her official capacity, as explained above, "a § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon*, 404 F.3d at 687. Therefore, the Plaintiffs' failure to identify a basis for municipal liability as to Oneida County also precludes a viable claim against the County DSS Supervisor in her official capacity. *See supra* Section V.A.1; *see also, e.g.*, *Welch v. Fitzgerald*, No. 5:18-CV-0461 (MAD/ATB), 2018 WL 6173796, at *6 (N.D.N.Y. May 16, 2018), *report and recommendation adopted*, 2018 WL 4795759 (N.D.N.Y. Oct. 4, 2018). Additionally, Laurie Ellis "is not named or identified in the caption or list of parties" as a defendant, therefore, any claim against her in her individual or official capacity would be subject to dismissal for failure to state a claim. *Burrell v. DOCCS*, 655 F. Supp. 3d 112, 125 (N.D.N.Y. 2023).

### 3. Mohawk Valley Community Action Agency

The third defendant listed in the complaint is the Mohawk Valley Community Action Agency daycare center. Dkt. No. 1 at 3. Plaintiffs seek to hold this defendant liable in its official capacity. *See id.* However, Plaintiffs have not alleged the entity is a state actor for purposes of § 1983, nor have they asserted any facts which would permit the Court to draw that inference. *See id.* at 3-10. Indeed, the sole factual assertion concerning this defendant is that "[t]here were multiple times that Mohawk Valley Community Action Agency were involved in calling CPS to have my children removed." *Id.* at 4. Accordingly, the undersigned recommends dismissal of the complaint as to the Mohawk Valley Community Action Agency. *See Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (explaining, "[b]ecause the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.") (citation omitted); *see also, e.g.*, *Burgdorf v. Betsy Ross Nursing & Rehab. Ctr. Inc.*, No. 6:22-CV-0987 (DNH/ATB), 2023 WL 112092, at *5 (N.D.N.Y. Jan. 5, 2023) (recommending dismissal of § 1983 claims against three entities where the plaintiff had "not alleged any facts suggesting that these entities are state actors under any of the aforementioned exceptions, or describing how their actions are otherwise fairly attributable to the state.") (internal quotations omitted), *report and recommendation adopted*, 2023 WL 418045 (N.D.N.Y. Jan. 26, 2023).

### 4. Heidi Garber

The final defendant listed in the complaint is Heidi Garber, in her individual capacity. Dkt. No. 1 at 3. Plaintiffs state Garber worked as a babysitter, *see id.*, and allege she "abused" two of the children, admitted such conduct to Plaintiff(s), and "refused to take" a "lie detector test" regarding the incident, *id.* at 5, 8. However, Plaintiffs do not assert any facts from which the Court could conclude Garber is a state actor or that her alleged actions are fairly attributable to the state. Therefore, the undersigned

recommends dismissal of the complaint as to Heidi Garber. *See supra* Section V.A.1; *see also Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013) (Summary Order) ("private individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law.").

## B. *Younger* Abstention, [4] *Rooker-Feldman*, [5] and the Domestic Relations Exception

[4]     *See generally, Younger v. Harris*, 401 U.S. 37 (1971).

[5]     *See generally, District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

**\*6** Next, from what the undersigned can glean, Plaintiffs seek both monetary damages and custody of Shibley's four children. *See* Dkt. No. 1 at 6, 8-10. Although the nature of Plaintiffs' complaint makes it difficult to determine which of the following doctrines apply, based on the relief sought, this Court likely lacks jurisdiction to hear and/or should abstain from hearing the Plaintiffs' claims.

"[I]n the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine." *Walker v. O'Connor*, No. 1:22-CV-0581 (DNH/TWD), 2022 WL 2341420, at \*6 (N.D.N.Y. June 29, 2022) (citing *Younger v. Harris*, 401 U.S. 37 (1971)) (additional citation omitted), *report and recommendation adopted*, 2022 WL 2805462 (N.D.N.Y. July 18, 2022). "*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Younger*, 401 U.S. at 43-44). "*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Id.* (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)).

Courts in this circuit have found these conditions to be satisfied in matters involving issues of child custody. *See, e.g.*, *Walker*, 2022 WL 2341420, at \*6 (collecting cases applying the *Younger* abstention doctrine in the context of child custody disputes). Therefore, to the extent Plaintiffs' claims involve a "custody dispute [that] is continuing in New York State Family Court, this Court should abstain from interfering with that process." *Id.*; *see also Terpening v. McGinty*, No. 1:21-CV-1215 (GTS/CFH), 2022 WL 17418268, at \*6 (N.D.N.Y. Oct. 5, 2022) ("It is unclear whether there are pending family court proceedings in which plaintiff seeks the Court's intervention .... However, 'the heart of this case is a child custody dispute, a matter rightfully reserved for state courts.' ") (citing *McKnight v. Middleton*, 699 F. Supp. 2d 507, 520 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011)) (additional citation omitted), *report and recommendation adopted*, 2022 WL 17415121 (N.D.N.Y. Dec. 5, 2022).

Alternatively, to the extent the Plaintiffs' claims concern a state court proceeding which has concluded, such claims are likely barred by the *Rooker-Feldman* doctrine. *See, e.g.*, *Amato v. McGinty*, No. 1:21-CV-0860 (GLS/TWD), 2022 WL 226798, at \*10 (N.D.N.Y. Jan. 26, 2022); *Walker*, 2022 WL 2341420, at \*6. "Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment." *Porter v. Nasci*, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at \*4 (N.D.N.Y. Mar. 15, 2024) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005)) (additional citations omitted), *report and recommendation adopted*, 2024 WL 3158645 (N.D.N.Y. June 25, 2024). "The doctrine also bars the federal court from considering claims that are 'inextricably intertwined' with a prior state court determination." *Amato*, 2022 WL 226798, at \*10 (citing *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at \*3 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016)) (additional citation omitted). [6]

[6]     *See also*, *Amato*, 2022 WL 226798, at \*11 (explaining, "[t]he *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court

to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered.") (citing *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014)).

**\*7** "There is no question that *Rooker-Feldman* bars ... challenges to" a state "family court's decisions regarding child custody ...." *Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002). Accordingly, to the extent Plaintiffs seek, in effect, an appeal from an unfavorable state court custody judgment, any such claim is barred. *See Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021); *Walker*, 2022 WL 2341420, at \*6.

Furthermore, under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside of this Court's jurisdiction. *See Marshall v. Marshall*, 547 U.S. 293, 308 (2006); *see also*, *Cruz v. New York*, No. 5:17-CV-0510 (BKS/TWD), 2017 WL 6021838, at \*7 (N.D.N.Y. Oct. 27, 2017) ("Claims involving child custody, support, and visitation brought in federal district court in this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction.") (collecting cases), *report and recommendation adopted*, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017). "Therefore, insofar as the present *pro se* Complaint seeks the restoration of custody over her son, the federal courts lack jurisdiction to hear that claim, and it should be dismissed." *Reeves v. Dep't of Children, Youth & Families*, No. 1:20-CV-0987 (BKS/DJS), 2020 WL 5898866, at \*3 (N.D.N.Y. Sept. 4, 2020) (citation omitted); *report and recommendation adopted*, 2020 WL 5891564 (N.D.N.Y. Oct. 5, 2020).

### C. Additional Deficiencies

Finally, notwithstanding the aforementioned issues, the complaint suffers from additional defects. First, while Christopher Wheeler, Sr., is listed as a plaintiff and has submitted an IFP application, he has not signed the compliant. *See generally*, Dkt. Nos. 1, 4. Thus, the complaint violates Federal Rule of Civil Procedure 11(a) and Northern District of New York Local Rule 10.1(c)(2). *See, e.g., Boyle v. Town of Hammond*, No. 7:08-CV-1065 (TJM/GJD), 2008 WL 11416992, at \*1 (N.D.N.Y. Oct. 24, 2008) (explaining, *pro se* plaintiff "James F. Boyle may not represent any of the other individuals that he lists as plaintiffs. Those individuals could have signed the complaint and appeared as *pro se* plaintiffs, but James F. Boyle may not sign the complaint for them or proceed on their behalf."), *aff'd*, 375 F. App'x 85 (2d Cir. 2010); *Goode v. Halderman*, No. 3:11-CV-1461, 2011 WL 6122960, at \*1 n.1 (D. Or. Dec. 9, 2011) ("the Complaint, while purportedly brought by [two individuals], was signed only by [one of the plaintiffs] .... a *pro se* Plaintiff may not bring an action on behalf of another; instead, both *pro se* Plaintiffs must sign every pleading or other document submitted to the Court.") (citing Fed. R. Civ. P. 11(a)); N.D.N.Y. L.R. 10(c)(2).

The complaint also falls short of the pleading requirements set forth in Federal Rules 8 and 10. Rule 8 requires, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a)(2). Each statement must be "simple, concise, and direct," Fed. R. Civ. P. 8(d)(1), and provide "fair notice of the claims asserted." *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (Summary Order) (citing *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). "A complaint may be dismissed under Rule 8 if it 'is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.' " *Id.* (quoting *Simmons*, 49 F.3d at 86 (2d Cir. 1995)).

**\*8** Moreover, Rule 10 provides "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). The Rule's purpose is "to provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, No. 1:22-CV-1248 (MAD/ DJS), 2022 WL 17517312, at \*2 (N.D.N.Y. Dec. 8, 2022) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023).

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense, "provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims[,]" and may properly be dismissed. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). Therefore, dismissal of the instant complaint on this basis would also be appropriate. *See, e.g., Griffith v. New York State*, No. 5:23-CV-1266 (DNH/ML), 2024 WL 1641587, at \*4 (N.D.N.Y. Mar. 20, 2024) (recommending "dismissal of the Complaint because it is not acceptable under Rules 8 and 10 of the Fed. R. Civ.

P. and because Plaintiff's Section 1983 claim or claims against Defendant are entirely unclear."), *report and recommendation adopted*, No. 5:23-CV-1266, 2024 WL 1639856 (N.D.N.Y. Apr. 16, 2024).

**D. Leave to Amend**

Although the Court has serious doubts, it is not clear whether Plaintiffs could assert a cognizable cause of action against the Defendants by way of a better pleading. Therefore, out of an abundance of caution and in deference to the Plaintiffs' *pro se* status, the undersigned recommends the action be dismissed without prejudice and with leave to amend. If Plaintiffs chose to avail themselves of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which they rely to support any legal claims asserted, which Plaintiffs have a legal right to pursue, and over which this Court has jurisdiction. Of course, Plaintiffs may also pursue their claims in state court if appropriate.

**VI. CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiffs' motions to proceed IFP (Dkt. Nos. 3, 4) are **GRANTED**, [7] and it is further

[7]    Although their applications to proceed IFP have been granted, Plaintiffs will still be required to pay fees that they may incur in the future regarding this action, including, but not limited to, copying and/or witness fees.

**RECOMMENDED** that the complaint be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide to Plaintiffs a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. [8] Such objections shall be filed with the Clerk of the Court. <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[8]    If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**\*9 IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 3460788

**End of Document**        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4203975
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Annamay SHIBLEY and Christopher Wheeler, Sr., Plaintiffs,

v.

Jennifer BIXLEROND, Department of Social Services, Mohawk
Valley Community Action Agency, and Heidi Garber., Defendants.

6:24-cv-722 (BKS/TWD)
|
Signed September 16, 2024

**Attorneys and Law Firms**

Plaintiffs pro se: Annamay Shibley, Christopher Wheeler, Sr., Frankfort, NY 13340.

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, Chief United States District Judge:

**\*1**  Plaintiffs Annamay Shibley and Christopher Wheeler, Sr. commenced this proceeding under 42 U.S.C. § 1983, and sought leave to proceed *in forma pauperis* ("IFP"). (Dkt. Nos. 1, 3,4). This matter was referred to United States Magistrate Judge Therese Wiley Dancks who, on July 16, 2024, granted Plaintiffs' applications to proceed IFP, and issued a Report-Recommendation, recommending that Plaintiffs' complaint be dismissed without prejudice and with leave to amend. (Dkt. No. 10). Plaintiffs were informed that they had fourteen days within which to file written objections to the report under 28 U.S.C. § 636(b)(1), and that the failure to object to the report within fourteen days would preclude appellate review. (*Id.* at 12-13). On July 29, 2024, the Court issued an Order giving Plaintiffs an extension of time to file objections to the Report-Recommendation. (Dkt. No. 12). No objections to the Report-Recommendation have been filed.

As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation in its entirety.

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Dancks's Report-Recommendation (Dkt. No. 10) is **ADOPTED**; and it is further

**ORDERED** that Plaintiffs' Complaint (Dkt. No. 1) is **DISMISSED** without prejudice and with leave to amend; and it is further

**ORDERED** that any amended complaint must be filed **within thirty (30) days** of the date of this Order. Any amended complaint must be a complete pleading which will replace the current complaint in total; and it is further

**ORDERED** that if Plaintiffs file a timely amended complaint, it shall be referred to Magistrate Judge Dancks for review; and if Plaintiffs fail to file a timely amended complaint, the Clerk is directed to close this case; and it is further

**ORDERED** that the Clerk serve a copy of this Order on Plaintiffs in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 4203975

---

End of Document                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 5361071

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Kimberly VIROLA, Plaintiff,

v.

Kevin Matthew GONYO, et al., Defendants.

1:24-CV-1393 (LEK/DJS)

|

Signed December 2, 2024

**Attorneys and Law Firms**

KIMBERLY VIROLA, Plaintiff Pro Se, Rensselaer, New York 12144.

**REPORT-RECOMMENDATION and ORDER** [1]

[1]   "A decision to deny or revoke IFP status [ ] is generally regarded as dispositive and thus falls outside [a magistrate judge's] purview." *Abreu v. Lira*, 2014 WL 4966911, at *2 n.1 (N.D.N.Y. Sept. 30, 2014) (citing *Kiobel v. Millson*, 592 F.3d 78, 92 (2d Cir. 2010)).

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk of the Court has sent to the undersigned for review a Motion for Leave to Proceed *In Forma Pauperis* ("IFP") filed by *pro se* Plaintiff Kimberly Virola. Dkt. No. 2.

A court may authorize a litigant to proceed *in forma pauperis* if it determines that he or she is unable to pay the filing fee. 28 U.S.C. § 1915(a)(1). "The decision of whether to grant an application to proceed IFP rests within the sound discretion of the court." *Deep v. Boies*, 2010 WL 11526763, at *1 (N.D.N.Y. Mar. 19, 2010) (citation omitted).

As a standard for determining eligibility for IFP status, section 1915(a)(1) does not set financial guideposts; instead, the statute merely provides that IFP status may be granted when the court is satisfied "that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). To make this threshold showing a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Fiebelkorn v. U. S.*, 77 Fed. Cl. at 62 (citing *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339, 69 S. Ct. 85 (1948)). Put another way, section 1915(a)(1) does not require a showing of absolute destitution to qualify for IFP status. *Lee v. McDonald's Corp.*, 231 F.3d 456, 458 (8th Cir. 2000). As the Second Circuit has noted, "[n]o party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick v. Eastern State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (citing *Adkins*, 335 U.S. at 339, 69 S. Ct. at 89).

*Id.*

Plaintiff's IFP application stated that she is employed. Dkt. No. 2 at p. 1. She did not, however, answer the following question seeking information about how much money she earns from that employment. *Id.* This is critical information for the Court to assess whether Plaintiff has the ability to pay the filing fee here. "[B]ecause the motion lacks complete information necessary to assess whether plaintiff is unable to pay the filing fees, the undersigned recommends that it be DENIED WITHOUT PREJUDICE." *Underwood v. Pratt & Whitney*, 2023 WL 11897989, at *1 (D. Conn. Apr. 18, 2023).

The Court recommends that the District Court deny the IFP application, but afford Plaintiff the opportunity to submit a new application containing more detailed information about her income, assets, and other financial obligations.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[2] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[2]   If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**\*2  IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 5361071

---

**End of Document**                                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 317243
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kimberly VIROLA, Plaintiff,

v.

Kevin Matthew GONYO, et al., Defendants.

1:24-cv-1393 (LEK/DJS)
|
Signed January 28, 2025

**Attorneys and Law Firms**

Kimberly Virola, Renselar, NY, Pro Se.

**MEMORANDUM-DECISION AND ORDER**

LAWRENCE E. KAHN, United States District Judge

**I. INTRODUCTION**

 **\*1** Plaintiff Kimberly Virola commenced this action by filing a complaint, Dkt. No. 1 ("Complaint"), and an application to proceed in forma pauperis, Dkt. No. 2 ("IFP Application"). On December 2, 2024, the Honorable Daniel J. Stewart, United States Magistrate Judge, issued a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d), recommending the Court deny the IFP Application and grant Plaintiff the opportunity to submit a new application. Dkt. No. 5 ("Report and Recommendation") at 2.

No party has filed objections to the Report and Recommendation. For the reasons that follow, the Court adopts the Report and Recommendation in its entirety.

**II. BACKGROUND**

In the Report and Recommendation, Judge Stewart found that on Plaintiff's IFP Application, she "stated that she is employed," but she did not "answer the following question seeking information about how much money she earns from that employment." R. & R. at 2. Judge Stewart noted that the amount of Plaintiff's income "is critical information for the Court to assess whether [she] has the ability to pay the filing fee here." *Id.* Accordingly, Judge Stewart recommended denying the IFP Application but affording Plaintiff "the opportunity to submit a new application containing more detailed information about her income, assets, and other financial obligations." *Id.*

**III. LEGAL STANDARD**

"Within fourteen days after being served with a copy [of the Magistrate Judge's report and recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28 U.S.C. § 636(b)(1)(C); *see also* L.R. 72.1. However, if no objections are made, a district court need only review a report and recommendation for clear error. *See DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) ("The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record."). Clear error "is present when upon review of the entire record, the court is left with the definite and firm conviction that a mistake has been committed." *Rivera v. Fed. Bureau of Prisons*, 368 F. Supp. 3d 741, 744 (S.D.N.Y.

2019) (cleaned up). Upon review, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

**IV. DISCUSSION**

No party objected to the Report and Recommendation within fourteen days after being served with a copy of it. Accordingly, the Court reviews the Report and Recommendation for clear error. *See DiPilato*, 662 F. Supp. 2d at 339. Having found none, the Court approves and adopts the Report and Recommendation in its entirety. The Court provides Plaintiff thirty days to file an amended IFP application.

**V. CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that the Report and Recommendation, Dkt. No. 5, is **APPROVED and ADOPTED in its entirety**; and it is further

**\*2 ORDERED**, that Plaintiff's IFP Application, Dkt. No. 2, is **DENIED**; and it is further

**ORDERED**, that if Plaintiff does not file an amended IFP application within thirty (30) days of this Memorandum-Decision and Order, the Clerk shall close this action without further order from the Court; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 317243

---

End of Document                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 4966911
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Carlos ABREU, Plaintiff,

v.

Michael J. LIRA, et al., Defendants.

No. 9:12–CV–1385 (NAM/DEP).
|
Signed Sept. 30, 2014.

**Attorneys and Law Firms**

Carlos Abreu, Alden, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney General, Joshua E. McMahon, Esq., Assistant Attorney General, Albany, NY, for Defendants.

### MEMORANDUM–DECISION AND ORDER

Hon. NORMAN A. MORDUE, Senior District Judge.

**\*1** By letter motion (Dkt. No. 59), defendants request that this Court take the following actions: reverse its preliminary finding that plaintiff, an inmate in the custody of New York State Department of Corrections and Community Supervision ("DOCCS"), was entitled to the imminent harm exception to the "three strikes" rule of 28 U.S.C. § 1915(g); revoke plaintiff's *in forma pauperis* status; and direct plaintiff to file the full $350 filing fee associated with this action before proceeding. As set forth briefly below, the motion is granted.

Section 1915, concerning proceedings *in forma pauperis,* provides in subdivision (g) as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). In its initial order (Dkt. No. 5) granting plaintiff's application for *in forma pauperis* status, the Court noted that its finding that plaintiff may be entitled to proceed *in forma pauperis* "is a preliminary finding, and plaintiff's *in forma pauperis* status will be revoked if, as the case progresses, it is determined that he did not face imminent danger of serious physical injury when he commenced this action or is otherwise not entitled to proceed *in forma pauperis.*"

On this motion, defendants argue that, in fact, plaintiff did not face imminent danger of serious physical injury when he commenced this action, and that therefore his *in forma pauperis* status must be revoked. Defendants' motion is accompanied by a declaration from Amber A. Lashway, a Nurse Pratitioner employed by DOCCS. At the time plaintiff filed his complaint claiming

that he was in "imminent danger of physical harm" Nurse Lashway was employed at New York State's Upstate Correctional Facility and was responsible for overseeing plaintiff's medical care. After two extensions of time, plaintiff filed an affidavit (Dkt. No. 68) and a letter (Dkt. No. 66) in opposition to the motion. Attached to these two submissions are exhibits totalling almost 300 pages (Dkt.Nos.66, 68).

Upon referral pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c) United States Magistrate Judge David E. Peebles issued an excellent Report and Recommendation (Dkt. No. 73) recommending that plaintiff's *in forma pauperis* status be revoked and he be ordered to pay the full $350 filing fee and that, if plaintiff does not timely comply, the complaint be dismissed by the Clerk without further order of the Court. Plaintiff objects (Dkt.Nos.79, 82). Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court reviews *de novo* those parts of a report and recommendation to which a party specifically objects.

 **\*2** In his objection, plaintiff argues that he does not have three strikes. The Court has reviewed the orders in the cases relied on by this Court and Magistrate Judge Peebles in determining that plaintiff had three strikes, and reaffirms that plaintiff does have three strikes.

In reviewing the issues surrounding plaintiff's claim that at the time he filed the complaint, he was facing imminent danger of serious physical injury, the Court agrees with Magistrate Judge Peebles' legal analysis and agrees that it is appropriate for the Court to review evidence outside the allegations of the complaint upon defendants' challenge to plaintiff's IFP status. Plaintiff has had ample opportunity to respond to defendants' challenge. Taking the entire record into account, including plaintiff's submissions in response to the Report and Recommendation, the Court finds that plaintiff's voluminous medical records, viewed in conjunction with Nurse Lashway's declaration and plaintiff's submissions, establish that plaintiff was not suffering any medical condition that would support a finding of imminent danger of physical injury at the time he filed the complaint herein. Nor was he in imminent danger in any other respect. There is no material question of fact warranting a hearing. Upon *de novo* review, the Court adopts Magistrate Judge Peebles' Report and Recommendation in its entirety.

It is therefore

ORDERED that the Report and Recommendation (Dkt. No. 73) is accepted; and it is further

ORDERED that defendants' motion (Dkt. No. 59) is granted; and it is further

ORDERED that plaintiff's *in forma pauperis* status is revoked and plaintiff is ordered to pay the full $350 filing fee in effect when he filed his complaint, with credit for any amounts previously collected from his prison account and forwarded it to this Court, on or before October 31, 2014; and it is further

ORDERED that **PLAINTIFF IS WARNED THAT IF HE FAILS TO PAY THE FULL FILING FEE ON OR BEFORE OCTOBER 31, 2014, THE COMPLAINT WILL BE DISMISSED BY THE CLERK WITHOUT FURTHER ORDER OF THE COURT;** and it is further

ORDERED that the Clerk of the Court is directed to serve copies of this MemorandumDecision and Order in accordance with the Local Rules of the Northern District of New York.

IT IS SO ORDERED.


*REPORT AND RECOMMENDATION* [1]

[1] The decision to grant an application for leave to proceed *in forma* pauperis ("IFP") falls within my non-consensual jurisdiction under 28 U.S.C. § 636(b)(1)(A). *Woods v. Dahlberg,* 894 F.2d 187, 188 (6th Cir.1990). A decision to deny or revoke IFP status, however, is generally regarded as dispositive and thus falls outside my purview. *Woods,* 894 F.2d at 187; *accord, Kiobel v. Millson,* 592 F.3d 78, 92 (2d Cir.2010) ( "[C]ourts have decided that, in addition to the powers explicitly withheld from magistrate judges by § 636(b)(1)(A), the power of magistrate judges to 'determine' does not extend to rulings ... that deny a motion to proceed *in forma pauperis."* ). Accordingly, in light of my finding that plaintiff is not entitled to proceed IFP, I have formatted this opinion as a report and recommendation.

DAVID E. PEEBLES, United States Magistrate Judge.

*Pro se* plaintiff Carlos Abreu, a New York State prison inmate, has commenced this action against several employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), pursuant to 42 U.S.C. § 1983, alleging that he was deprived of his civil rights during the course of his incarceration. [2] Accompanying plaintiff's complaint was a request for leave to proceed *in forma pauperis* ("IFP"). Plaintiff's IFP application was granted by the court based upon a preliminary finding that, although Abreu has accumulated three strikes for purpose of 28 U.S.C. § 1915(g), he qualified for the imminent-danger exception to the three strikes provision at the time his complaint was filed.

[2] Plaintiff named forty-seven defendants in his complaint. *See generally* Dkt. No. 1. Certain of those defendants have since been dismissed from the suit based upon the court's initial review of his complaint. Dkt. No. 5.

**\*3** By letter received by the court, defendants' counsel has requested reconsideration of that earlier decision granting plaintiff leave to proceed in the action IFP on the basis that, at the time of filing, plaintiff did not face the imminent danger he alleged. For the reasons set forth below, I agree and recommend that plaintiff's IFP status be revoked.

I. *BACKGROUND*

Plaintiff commenced this action on September 10, 2012, by the filing of a complaint dated six days earlier, as well as an application seeking leave to proceeding in the action IFP and a motion for a preliminary injunction. Dkt. Nos. 1–3. At the time of filing, plaintiff was an inmate being held in the custody of the DOCCS at the Upstate Correctional Facility ("Upstate"), located in Malone, New York. [3] *See generally* Dkt. No. 1.

[3] Upstate is a maximum security prison comprised exclusively of special housing unit ("SHU") cells in which inmates are confined for twenty-three hours each day, primarily for disciplinary reasons. *Samuels v. Selsky,* No. 01–CV–8235, 2002 WL 31040370, at *4 n. 11 (S.D.N.Y. Sept. 12, 2002).

On February 28, 2013, Senior District Judge Norman A. Mordue issued an order granting plaintiff's IFP application, and, after reviewing the complaint for legal sufficiency pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, permitted the action to go forward with regard to plaintiff's claims of (1) deliberate indifference to his serious medical needs, (2) denial of procedural due process with respect to disciplinary hearings and the imposition of a disciplinary diet, (3) unlawful retaliation based upon the filing of grievances, (4) cruel and unusual punishment based upon the conditions of plaintiff's confinement and interference with this right to receive mail, (5) denial of access to the courts, and (6) interference with plaintiff's right to practice his religion through the denial of religious meals, in violation of both the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. [4]

[4] Plaintiff's motion for a preliminary injunction was denied by decision and order issued by Judge Mordue on August 15, 2013. Dkt. No. 63.

In his decision granting plaintiff's IFP application, Judge Mordue found that, as of the date plaintiff signed his complaint, at least three of his prior actions and appeals had been dismissed as frivolous and/or for failure to state a claim upon which relief may be

granted.[5] Dkt. No. 5 at 2–3. He nonetheless concluded, based upon the allegations in the complaint regarding whether plaintiff received adequate medical and mental health care while at Upstate, that Abreu qualified for the imminent danger exception under the three strikes provision of section 1915(g). *Id.* at 4. The court noted, however, that this was a **"preliminary finding,"** and advised that plaintiff's IFP status would be revoked should it later be determined that he was not in fact in imminent danger of serious physical injury at the time the action was commenced. *Id.* (emphasis in original). In a footnote, the court added that "[d]efendants are ... entitled to refute this preliminary finding in future filings." *Id.* at 5 n. 5.

5    Judge Mordue based this finding, in part, on an earlier conclusion by Senior District Judge Lawrence E. Kahn that plaintiff had accumulated three strikes for purposes of section 1915(g). *See* Dkt. No. 5 at 2–3 (citing *Abreu v. United States,* No. 11–CV–1104, Dkt. No. 7 (N.D.N.Y. filed Sept. 19, 2011) (Kahn, J.)).

By letter dated July 11, 2013, defendants' counsel requested the court to reconsider its earlier IFP ruling. Dkt. No. 59. In support of their motion, defendants submitted a declaration of Nurse Practitioner Amber Lashway, one of the defendants in this action, refuting plaintiff's assertion that, at the time of filing, he faced imminent danger as a result of the medical treatment, or lack of treatment, provided to him at Upstate. Dkt. No. 59–1. Plaintiff has since responded in opposition to that motion, and the parties have filed reply and surreply papers.[6] Dkt. Nos. 66–68.

6    Ironically, in plaintiff's surreply (the filing of which violates the local rules of practice for this court in light of his failure to seek court permission prior to filing), he complains that defendants' letter motion requesting revocation of his IFP status does not comply with the local rules governing motion practice for this court. Dkt. No. 68 at 6. Because the court retains discretion to enforce the local rules for this court, and because both parties have, at different times, disregarded those rules, I deem it unnecessary to sanction either party for their violations. *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir.2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.").

## II. *DISCUSSION*

**\*4** When a civil action is commenced in a federal district court, the statutory filing fee, set at $350 at the time plaintiff filed this action, must ordinarily be paid.[7] 28 U.S.C. §§ 1915(a). Although a court is authorized to permit a litigant to proceed IFP if it is determined that he is unable to pay the required filing fee, section 1915(g) provides that

7    Effective May 1, 2013, the Judicial Conference increased the fee for commencing an action in a federal district court from $350 to $400 by adding a $50 administrative fee. Because plaintiff commenced this action prior to the effective date of this increase, the filing fee in this case remains $350.

[i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The manifest intent of Congress in enacting this "three strikes" provision was to deter the filing of multiple, frivolous civil rights suits by prison inmates. *Tafari v. Hues,* 473 F.3d 440, 443–44 (2d Cir.2007) (citing *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997)); *accord, Gill v. Pidlychak,* No. 02–CV–1460, 2006 WL 3751340, at \*2 (N.D.N.Y. Dec. 19, 2006) (Scullin, S.J., *adopting report and recommendation by* Treece, M.J.).[8] The prophylactic effect envisioned under section 1915(g) is accomplished by requiring a prisoner who has accumulated three strikes to undertake the same cost-benefit analysis in which other civil litigants engage before filing suit—that is, whether the result sought to be achieved justifies paying the entire filing fee in advance, rather than in small increments from his inmate account. *Tafari,* 473 F.3d at 443.

8    All unreported decisions cited in this report have been appended for the convenience of the *pro se* plaintiff.

The Second Circuit has defined a frivolous claim as one that "lacks an arguable basis either in law or in fact." *Tafari,* 473 F.3d at 442. To determine whether a dismissal satisfies the failure-to-state-a-claim prong of section 1915, courts look to Rule 12(b)(6) of the Federal Rules of Civil Procedure for guidance. *Id.* The question of whether the dismissal of a prior action constitutes a strike for purposes of section 1915(g) is a matter of statutory interpretation, and as such a question for the court. *Id .*

Based upon the findings of District Judges Mordue and Kahn, as well as my own independent evaluation of plaintiff's litigation history, I conclude that plaintiff had incurred at least three strikes by the time he commenced this action in September 2012. *See Abreu v. Supreme Court of the Bronx Cnty.,* No. 10–CV–1310, Dkt. No. 4 (S.D.N.Y. filed Feb. 18, 2010) (dismissing plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); *Abreu v. Disability Advocates, Inc.,* No. 09–CV–6306, Dkt. No. 8 (S.D.N.Y. filed July 15, 2009) (Second Circuit's mandate dismissing plaintiff's appeal because it "lack[ed] an arguable basis in law or fact"); *Abreu v. Disability Advocates, Inc.,* No. 09–CV–6306, Dkt. Nos. 3, 4 (S.D.N.Y. filed July 15, 2000) (dismissing the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)).

**\*5** As a safety valve, section 1915(g) provides that a prisoner who is in "imminent danger of serious physical injury" may avoid application of the three strikes rule in section 1915(g). 28 U.S.C. § 1915(g); *see also Malik v. McGinnis,* 293 F.3d 559, 562–63 (2d Cir.2002). In accordance with this exception, an inmate who has accrued three prior "strikes" but nonetheless wishes to commence a new action IFP must show that he was under imminent danger at the time of filing; the exception does not provide a basis to avoid application of the three-strikes rule on the basis of past harm. *Malik,* 293 F.3d at 562–63. An inmate who claims the benefit of this exception must also allege that the danger he faces rises to the level of exposure to a "serious physical injury." 28 U.S.C. § 1915(g). The term "serious physical injury," as utilized in section 1915(g), has been construed by various courts as including an ailment that "could result in serious harm or even death [.]" *Ibrahim v. D.C.,* 463 F.3d 3, 7 (D.C.Cir.2006); *accord, Jackson v. Jin,* No. 12–CV–6445, 2014 WL 1323211, at \*1 (W.D.N.Y. Mar. 31, 2014).

The imminent danger claimed by the inmate must be real, and not merely speculative or hypothetical. *See, e.g., Johnson v. Barney,* No. 04–CV–10204, 2005 WL 2173950, at \*1–2 (S.D.N.Y. Sept. 6, 2005) (finding that the plaintiff was not entitled to qualified immunity where he alleged that he faced a risk of harm at a facility in which he was not currently confined and may pass through infrequently). Claims of imminent danger, moreover, must be evaluated at the point in time when a plaintiff's complaint is filed, rather than when the events alleged occurred. *Malik,* 293 F.3d at 562–63; *accord, Pettus v. Morganthal,* 554 F.3d 293, 296 (2d Cir.2009).

For a three-strikes litigant to qualify for the imminent danger exception, his complaint "must reveal a nexus between the imminent danger it alleges and the claims it asserts." *Pettus,* 554 F.3d at 298. When determining whether the requisite relationship exists, a court must examine "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is *fairly traceable* to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would *redress* that injury." *Id.* at 299 (emphasis in original).

In deciding whether a plaintiff qualifies to proceed IFP under the imminent-danger exception, neither the Second Circuit nor the district courts in this circuit have explicitly decided whether a court is confined the allegations contained in the complaint or instead may look to materials outside of the complaint. In *Chavis,* the Second Circuit offered the following guidance with respect to a court's analysis of the imminent-danger exception:

[A]lthough the feared physical injury must be 'serious,' 'we should not make an overly detailed inquiry into whether the allegations qualify for the exception,' because [section] 1915(g) 'concerns only a threshold procedural question,' while 'separate PLRA provisions are directed at screening out meritless suits early on.' *Andrews v. Cervantes,* 493 F.3d 1047, 1055 (9th Cir.2007); *see also Ciarpaglini v. Saini,* 352 F.3d 328, 331 (7th Cir.2003) ( "Section 1915(g) is not a vehicle for determining the merits of a claim. To fine-tune what is 'serious enough' to qualify for the exception would result in a complicated set of rules about what conditions are serious enough, all for a simple statutory provision governing when a prisoner must pay the filing fee for his claim. This is not required.').

**\*6** 618 F.3d at 169–70 (alterations omitted). This language, as well as the court's analysis in *Chavis,* suggests that, when determining whether a litigant is entitled to section 1915(g)'s imminent-danger exception, a court should confine its attention to the allegations contained in a plaintiff's complaint. *See id.* at 170–71 (analyzing the plaintiff's amended complaint, and concluding that his allegations therein "by [themselves] would appear to be sufficient to allege imminent danger of serious physical injury"). [9] Similarly, an analysis of at least one of the cases cited by the Second Circuit reiterates the view that courts should focus on the allegations in a plaintiff's complaint when analyzing imminent danger. [10] *See Cervantes,* 493 F.3d at 1055 ("Instead, the exception applies if the complaint makes a plausible allegation that the prisoner faced imminent danger of serious physical injury at the time of filing." (quotation marks omitted)). [11] Courts in this district have also seemingly held that an imminent-danger inquiry requires only an analysis of the allegations in the complaint. *See, e.g., Williams v. Fisher,* No. 11–CV–0379, 2013 WL 636983, at \*9 (N.D.N.Y. Jan. 29, 2013) (Dancks, M.J.), *report and recommendation adopted by* 2013 WL 628641 (N.D.N.Y. Feb. 20, 2013) (Mordue, J.), ("Courts, including the District Court in this case, 'maintain a singular focus on the facts alleged in the complaint' in deciding whether a prisoner qualifies for the imminent danger exception." (quoting *Cervantes,* 493 F.3d at 1053)); *Henderson v. Clover Field,* No. 08–CV–0504, 2008 WL 2405705, at \*3 n. 2 (N.D.N.Y. June 11, 2008) (McCurn, J., *adopting report and recommendation by* Lowe, M.J.) ("When determining whether a prisoner has qualified for the 'imminent-danger' exception, courts look at the non-conclusory allegations in the plaintiff's complaint." (listing cases)). [12]

[9]    Interestingly, the Second Circuit supplemented its finding in *Chavis* that the allegations in the plaintiff's amended complaint were sufficient to satisfy the imminent-danger exception by considering "the additional assertions that [plaintiff] included in his motion for a preliminary injunction." 618 F.3d at 171. The court explained that, "[a]lthough these additional facts came in an order to show cause, rather in [plaintiff]'s motion for leave to amend, 'a party appearing without counsel is afforded extra leeway in meeting the procedural rules governing litigation,' and hence 'courts are, for example, to construe a *pro se* litigant's pleadings and motions liberally.' " *Id.* (quoting *In re Sims,* 534 F.3d 117, 133 (2d Cir.2008)). In light of that explanation, I do not construe *Chavis* to be internally inconsistent—that is, on the one hand instructing courts to consider only the four corners of a complaint when deciding an imminent danger inquiry, and on the other permitting consideration of materials outside of the complaint. Rather, I simply construe the Second Circuit's consideration of materials outside of the complaint, which were consistent with the allegations contained in the amended complaint, as yet another exercise of this circuit's practice of extending special solicitude to *pro se* litigants. *See, e.g., Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 219 (N.D.N.Y.2008) (McAvoy, J., *adopting report and recommendation by* Lowe, M.J.) ("I am mindful that, in cases where a *pro se* civil rights plaintiff is faced with a motion to dismiss for failure to state a claim, courts will often (out of special solicitude) consider materials outside the complaint to the extent they are consistent with the allegations in the complaint.").

[10]    With respect to the Seventh Circuit case cited in *Chavis,* that court's decision does not indicate whether it was presented with anything except the plaintiff's allegations contained in the complaint. *See Ciarpaglini,* 352 F.3d at 331 (analyzing the defendants' argument that the plaintiff's "allegations are not serious enough" and, in any event, the "complaint ... alleges way too much"); *see also Taylor v. Watkins,* 623 F.3d 483, 485 (7th Cir.2010) ("[I]n [*Ciarpaglini* ] the defendants did not *deny* the plaintiff's allegations [regarding imminent danger]. Instead, the defendants argued that the allegations were not sufficiently *serious* to meet the imminent-danger exception [.]" (emphasis in original)).

[11]    In *Cervantes,* the Ninth Circuit acknowledged that, at that time, "no other circuit has specifically addressed post-complaint changes in circumstance," 493 F.3d at 1053, which is analogous to what defendants ask the court to do in this case.

[12]    The court in *Henderson* considered, for the first time, whether the plaintiff qualified for IFP status based on the imminent-danger exception. 2008 WL 2405705, at \*1. In contrast, the court in *Williams* considered whether the plaintiff was entitled to the exception for a second time in light of the defendants' motion to dismiss based on an assertion that the plaintiff's complaint did not allege facts plausibly suggesting he faced imminent danger of serious physical injury. 2013

WL 636983, at *1. Neither the *Henderson* nor *Williams* courts, however, were asked to consider material outside of the pleadings to make their determinations regarding imminent danger.

In contrast to the Second and Ninth Circuit's apparent approaches to making an imminent-danger determination, other courts, including the Seventh Circuit, have found it appropriate to consider evidence submitted in support of or opposition to the plaintiff's allegations. In *Taylor,* decided seven years after *Ciarpaglini,* the Seventh Circuit considered whether the district court erred in holding an evidentiary hearing to examine the plaintiff's allegations regarding imminent danger. *Taylor,* 623 F.3d at 485. After finding that *Ciarpaglini* merely held that "a court ... should not attempt to evaluate the seriousness of a plaintiff's claims," the court explained that

> it has never been the rule that courts must blindly accept a prisoner's allegations of imminent danger. Courts routinely deny IFP requests where the imminent-danger allegations are conclusory or ridiculous, or where they concern only past injuries. In the same vein, we agree with the district court in this case and the Third Circuit ... that when a defendant contests a plaintiff's claims of imminent danger, a court must act to resolve the conflict. A contrary conclusion would mean that a three-strikes plaintiff could proceed IFP whenever his allegations of imminent danger were facially plausible, even if the defendant had incontrovertible proof that rebutted those allegations. Such a rule would allow easy evasion of the three-strikes rule.

**\*7** *Id.* at 485. As suggested in that passage, the Seventh Circuit's holding in this regard is consistent with the view of the Third Circuit. *See Gibbs v. Roman,* 116 F.3d 83, 86 (3d Cir.1997), *overruled on other grounds by Abdul–Akbar v. McKelvie,* 239 F.3d 307, 312 (3d Cir.2001), ("If the defendant, after service, challenges the allegations of imminent danger ..., the district court must then determine whether the plaintiff's allegation of imminent danger is credible ... in order for the plaintiff to proceed on the merits [IFP]."). The Tenth Circuit has similarly concluded that a court must resolve a challenge to a preliminary finding that the plaintiff's complaint alleged sufficient facts to entitle him for the imminent danger exception. *See Stine v. U.S. Fed. Bureau of Prisons,* 465 F. App'x 790, 794 n. 4 (10th Cir.2012) ("[A]fter a district court provisionally grants IFP on the basis of a showing of imminent danger, the defendants are permitted to mount a facial challenge, based on full development of the facts, to the district court's provisional determination *on the face of the complaint* that [the prisoner] satisfies the imminent danger element." (quotation marks omitted, emphasis and alteration in original)).

After careful consideration, I find that the Second Circuit's suggestion in *Chavis* that courts should restrict their attention to the four corners of a complaint in connection with an imminent-danger inquiry applies only to the court's initial review of the complaint. The Second Circuit was not asked in *Chavis* to consider how a court should approach a defendant's subsequent challenge to an imminent-danger finding, nor was it asked to analyze evidence adduced after the complaint was filed that may refute a court's initial finding that the complaint plausibly alleged facts suggesting plaintiff was in imminent danger of a serious physical injury at the time the action was commenced. To the extent that a court may need to undertake a "detailed inquiry" when faced with a challenge to a preliminary finding that a plaintiff is entitled to the imminent-danger exception, *Chavis,* 618 F.3d at 169, I conclude that the Third, Seventh, and Tenth Circuits accurately rely on the court's obligation under section 1915(g) to ensure a plaintiff qualifies for IFP status before permitting a case to proceed. *See, e.g., Gibbs v. Cross,* 160 F.3d 962, 967 n. 8 (3d Cir.1998) ("We are mindful that [a section 1915(g) analysis] will often times necessitate further factfinding proceedings once the imminent danger allegation is challenged; a by product of the PLRA most likely not contemplated by Congress, but which must nonetheless be handled by the courts."). In my view, that obligation cannot be set aside merely because the issue involves a procedural matter.

Accordingly, I conclude that a court is permitted, and indeed has a duty, to examine all of the available evidence to determine whether a plaintiff's allegations regarding imminent danger to serious physical injury are credible, if challenged by a defendant. *Taylor,* 623 F.3d at 485; *Stine,* 465 F. App'x at 794 n. 4; *Roman,* 116 F.3d at 86; *see also Tafari v. Baker,* No. 11–CV–0694, 2012 WL 5381235, at *1 (N.D.N.Y. Oct. 31, 2012) (Sharpe, C.J.) (finding it necessary to hold an evidentiary hearing to determine

whether the plaintiff's allegations of imminent danger were credible). When examining the available evidence in this regard, I remain mindful that the analysis "should not evolve into a full-scale merits review, though in many cases, ... the allegations of imminent danger are linked to the allegations underlying the suit." *Taylor,* 623 F.3d at 486. "In resolving a contested issue of imminent danger, the district court may rely upon evidence supplied by sworn affidavits or depositions or, alternatively, may hold a hearing." [13] *Roman,* 116 F.3d at 86–87; *accord, Tafari,* 2012 WL 5381235, at *6; *Taylor,* 623 F .3d at 486; *see also Pettus v. Oakes,* No. 09–CV–6263, 2010 WL 456782, at *2 (W.D.N.Y. Feb. 4, 2010) (relying on the allegations in plaintiff's amended complaint, the plaintiff's statements made during at a video conference, and a declaration submitted by the plaintiff's attorney to find that the plaintiff "exaggerated his claims in order to fit within the exception to the 'three-strikes' rule of [section] 1915(g)").

[13]   As it concerns the particular case now before me, it is worth noting that plaintiff has not objected to defendants' reliance on materials outside his complaint to support their motion to revoke his IFP status. *See generally* Dkt. No. 66. Indeed, in his response to that motion, plaintiff has submitted his own evidence for consideration. *Id.* Accordingly, it appears that plaintiff has waived any objection to the court's consideration of and reliance on all of the record evidence now before me in deciding the defendants' motion.

**\*8**   In this case, liberally construed, the allegations in plaintiff's complaint suggest that, at time of filing, he was in imminent danger of serious physical harm for three reasons. First, he alleges that he faced imminent danger based on the imposition by Upstate security staff of a restricted diet for more than seven days. Dkt. No. 1 at 17–18. Second, plaintiff alleges that he faced imminent danger due to the defendants' alleged failure to provide him with adequate medical treatment while at Upstate. *Id.* at 19–20, 32. Third, he alleges that he was in imminent danger because he continued to experience suicidal thoughts and defendants ignored his requests for care. *Id.* at 60. In support of their motion to revoke plaintiff's IFP status, defendants have submitted a declaration from defendant Lashway, a nurse practitioner at Upstate who appears to have served as plaintiff's primary care provider in and around the time his complaint was filed. Dkt. No. 59–1. Defendants also rely on plaintiff's medical records and a declaration from Dr. Robert Bentivegna, a physician employed at Green Haven Correctional Facility, both of which were submitted to the court in opposition to plaintiff's motion for a preliminary injunction. Dkt. Nos. 55, 56.

With respect to plaintiff's allegations that the restricted diet caused him to be in imminent danger of serious physical harm, I find that his medical records belie that allegation. Although it is true, as plaintiff alleges, that he complained to medical staff at Upstate regarding his stomach pains and constipation during the time that he was on the restricted diet, his medical records demonstrate that he either was seen by medical staff, or medical staff attempted to evaluate him, on each day he was on the diet. Dkt. No. 56 at 86–90. Medical staff did not report any serious medical concerns regarding plaintiff's health during that time. *Id.* In addition, defendant Lashway averred that the restricted diet is nutritionally adequate and imposed as a disciplinary measure only after security staff consults with medical staff. Dkt. No. 59–1 at 2. In light of the daily monitoring plaintiff received by Upstate medical providers while on the restricted diet, and the medical records that demonstrate plaintiff was not suffering from any serious conditions during that time, I find he was not in imminent danger of serious physical injury at the time he commenced this action due to the imposition of the restricted diet. *See Wallace v. Cockrell,* No. 03–MC–0060, 2003 WL 21528744, at *2 (N.D.Tex. July 3, 2003) (finding the plaintiff's allegation that he was being starved while on a food loaf diet did not establish entitlement to the imminent-danger exception).

Plaintiff also alleges that he was in imminent danger of serious physical injury due to defendants' discontinuation of his prescription for (1) an asthma inhaler; (2) Atorvastatin, Lipitor, or equivalent for treatment of high cholesterol; (3) Claritin, Loratadine, or equivalent for allergies; (4) Naproxen or equivalent for pain relief; (5) Docusate or another stool softener for constipation; and (6) eyeglasses. Dkt. No. 1 at 19–20; Dkt. No. 66 at 7–8, 13. In response to these allegations, defendant Lashway has averred that, on or about August 16, 2012, plaintiff was given his medications by a nurse employed at Upstate while in his cell, but instead of taking them, he threw them onto the floor outside his cell. Dkt. No. 59–1 at 4 Dkt. No. 56 at 95. Immediately following this incident, defendant Lashway undertook an evaluation of plaintiff's health status, which, in her opinion, revealed that he no longer needed those medications to maintain his general health. Dkt. No. 59–1 at 4. For that reason, and because of plaintiff's refusal to accept the medication, defendant Lashway discontinued his medications. [14] *Id.*

Abreu v. Lira, Not Reported in F.Supp.3d (2014)
Case 1:25-cv-00971-AJB-TWD    Document 3    Filed 10/10/25    Page 72 of 74
2014 WL 4966911

14    As will be discussed below, defendant Lashway restarted him on his medications less than one month later. Dkt. No.
56 at 18.

**\*9** Defendant Lashway also states that plaintiff's asthma inhaler prescription was never discontinued, and, on September 17,
2012, seven days after plaintiff filed his complaint in this action, he underwent a routine evaluation in accordance with his
asthma treatment plan. Dkt. No. 59–1 a 5; Dkt. No. 56 at 8. During that evaluation, plaintiff claimed that he was not currently
using his inhaler and had suffered no asthma-related episodes. Dkt. No. 59–1 at 5; Dkt. No. 56 at 8, 85. In addition, because
plaintiff complained at that appointment that certain of his medications had been discontinued, defendant Lashway refilled his
prescriptions for Naproxen, Claritin, Lipitor, and Colace four days later. Dkt. No. 56 at 18.

In general, plaintiff's medical records demonstrate that he was under close medical supervision in and around the time he filed
his complaint in this matter. *See generally* Dkt. No. 56. He was informed who to speak to about his eyeglasses, his complaints
were noted throughout his medical records, staff recorded their observations and opinions regarding plaintiff's status, and he
was given medication when requested. *Id.* There is nothing in the record now before the court suggesting that, due to defendants'
alleged failure to provide medicine, eyeglasses, or medical treatment to plaintiff, he was in imminent danger of an ailment that
"could result in serious harm or even death" at the time he filed this action. [15] *Ibrahim,* 463 F.3d at 7.

15    In his response to the pending motion, plaintiff disputes defendant Lashway's veracity with regard to whether he refused
medical care or medication. Dkt. No. 66 at 9, 12. His response, however, which is formatted as a letter addressed to
me and is not signed under oath, does not point to any record evidence that would otherwise verify his statements. *See
generally* Dkt. No. 66.

Plaintiff's complaint also alleges that he "continue[s] feeling suicidal" and has informed all defendants of this. Dkt. No. 1 at
60. Plaintiff's medical records, however, do not note that he experienced suicidal ideations in or around September 2012. *See
generally* Dkt. No. 56. Moreover, in her declaration, defendant Lashway states that, "had plaintiff articulated to anyone that he
was suicidal or harbored thoughts of suicide, he would have been placed on a 1:1 watch and restricted to the infirmary under the
supervision of personnel within the New York State Office of Mental Health." Dkt. No. 59–1 at 6. A review of plaintiff's medical
records, however, reveals that he was not restricted in and around the time he filed his complaint. *See generally* Dkt. No. 56.

Plaintiff's mental health records, which were submitted by plaintiff as an exhibit attached to his complaint, indicate that he
allegedly swallowed fifty-five pills as a suicide attempt on July 18, 2012. Dkt. No. 4–3 at 155. As a result of that incident,
plaintiff was transferred to a local hospital for evaluation and placed on one-to-one observation while at the hospital. *Id.* Upon
his return to the prison facility, he was admitted to the Residential Crisis Treatment Program ("RCTP") where he remained on
one-to-one observation every day until he was released back to SHU confinement. *Id.* at 155, 169–74. New York State Office
of Mental Health ("OMH") staff evaluated plaintiff every day while he was in the RCTP and generated daily notes regarding
his status. *Id.* at 169–74. Generally, those notes indicate plaintiff was calm and cooperative while in the RCTP from July 18,
2012, through July 23, 2012. *Id.* On July 23, 2012, a nurse practitioner evaluated plaintiff and reported in his records that he
did not harbor suicidal or homicidal ideations. *Id.* at 168. The report also indicates that plaintiff "presents with no manic, no
depressed, no anxious, no psychotic symptoms." *Id.* at 168. On that date, plaintiff was released back to the SHU. *Id.* A note in
plaintiff's mental health records shows that prison officials followed up with him the next day, at which time they noted he slept
soundly, "[d]iscussed his court adventure," and showed no signs of acute distress. *Id.* at 175.

**\*10** Aside from these records, there is no evidence now before the court regarding plaintiff's allegations of suicidal thoughts
or ideations, including any suicidal thoughts he might have had in or around the time he filed his complaint in September
2012. In any event, however, the mental health records regarding plaintiff's alleged suicide attempt in July 2012 demonstrate
that his complaints were not ignored by anyone employed by the DOCCS or OMH. They also reflect that, just days after his
attempt, his suicidal thoughts subsided and he was returned to the SHU. Accordingly, to the extent that plaintiff alleges that his
suicide attempt in July 2012 establishes an imminent danger of serious harm in or around September 2012, when this action
was commenced, I find that his mental health records refute that allegation. [16]

16    I also note that, in response to the pending motion, plaintiff emphasizes that defendant Lashway does not work for the OMH and therefore does not have sufficient knowledge to testify regarding his suicidal thoughts. Dkt. No. 66 at 14. This assertion, however, is directly contradicted by the fact that, in his complaint, plaintiff explicitly alleged that he notified all defendants of his suicidal thoughts. Dkt. No. 1 at 60.

Based on the evidence now before me, including, as noted earlier, a clear record that plaintiff was under close medical care at the time this action was commenced, I find that he was not in imminent danger of serious physical harm due to defendants' alleged failure to respond to plaintiff's complaints of feeling suicidal.

Finally, before concluding, I pause to respond to plaintiff's additional allegations set forth for the first time in his response to the pending motion. He alleges that he was in imminent danger of serious physical injury due to an alleged assault that occurred at Upstate on December 3, 2012, and January 25, 2013. Dkt. No. 66 at 17. As noted earlier, plaintiff's response to the pending motion is not verified or otherwise sworn under penalty of perjury, and thus constitutes mere argument rather than evidence. *Lipton v. Nature Co.,* 71 F.3d 464, 469 (2d Cir.1995); *see also Smythe v. Am. Red Cross Blood Servs. NE N.Y. Region,* 797 F.Supp. 147, 152 (N.D.N.Y.1992) (McCurn, J.) ("It is not well-settled that the legal memoranda and oral argument are not evidence [.]" (quotation marks omitted)). In addition, plaintiff's medical records in and around December 3, 2012, do not reflect any indication that plaintiff was "assaulted, beaten, and sexually abused" by correctional officers at Upstate. Dkt. No. 56 at 57–61. While his medical records surrounding January 25, 2013, reflect complaints from plaintiff that he was beaten and assaulted by prison staff, plaintiff's complaint in this action does not he allege that he suffered imminent danger at the time of filing due to a threat of assault by Upstate staff. *See generally* Dkt. No. 1. Moreover, to the extent that the complaint or plaintiff's response to the pending motion could be construed as referencing a threat of physical assault by Upstate correctional staff, I find that they are merely conclusory. *See Ciarpaglini,* 352 F.3d at 331 ("Courts also deny leave to proceed IFP when a prisoner's claims of imminent danger are conclusory or ridiculous."); *Avent v. Fischer,* 07–CV–1135, 2008 WL 5000041, at *6 (N.D.N.Y. Nov. 20, 2008) (Hurd, J., *adopting report and recommendation by* Lowe, M.J.) ("[U]nless the prospect of ... a future assault is so specific and/or likely as to be deemed *real,* such an allegation will not suffice to allege an 'imminent danger on the date of the filing. This point of law is consistent with the rather well-established rule that the imminent danger claimed by the inmate must be real, and not merely speculative or hypothetical.") (quotation marks and citations omitted)).

 **\*11**  For all of the foregoing reasons, I conclude that plaintiff is not entitled to the imminent-danger exception to the three-strikes rule under section 1915(g).


III. *SUMMARY AND RECOMMENDATION*

My independent review of plaintiff's litigation history confirms the findings of District Judges Kahn and Mordue regarding the fact that plaintiff had accumulated three strikes within the meaning of section 1915(g) by the time this action was commenced. In addition, the record evidence, which includes plaintiff's medical records while in the custody of the DOCCS, establishes that the court's preliminary finding of imminent danger cannot be substantiated. Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's IFP status be revoked and he be ordered to pay the full $350 filing fee, with credit afforded for any amounts previously collected from his prison account and forwarded it to this court, within thirty days of the date of an order adopting this recommendation; and it is further

RECOMMENDED that, if plaintiff fails to timely comply with any directive to pay the full filing fee, his complaint be dismissed by the clerk without further order of the court.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

**Abreu v. Lira, Not Reported in F.Supp.3d (2014)**
Case 1:25-cv-00971-AJB-TWD    Document 3    Filed 10/10/25    Page 74 of 74
2014 WL 4966911

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: April 11, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4966911

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.